OPINION OF THE COURT
Thomas E. Mercure, J.
The issue presented in the within proceeding is whether the respondent superintendent may place the inmate petitioner on what the respondent terms “minimum privilege status” as a result of petitioner’s conceded refusal to accept a work assignment without first conducting a hearing pursuant to 7 NYCRR ch V. The issue contains two separate legal questions: (1) whether minimum privilege status is in fact equivalent to placement in a special housing unit, as defined in 7 NYCRR ch VI, and, if answered in the affirmative, (2) whether an inmate may be placed in a special housing unit solely as a result of his refusal to accept a work assignment.
There is no serious dispute concerning the facts. On October 29,1984, petitioner appeared before the program committee and refused all work assignments, requesting that he only be assigned to the laundry unit. That request was denied, and the petitioner was assigned to minimum privilege status until he would accept a job assignment. Petitioner has been advised on several occasions that he would be released from minimum privilege status upon acceptance of a job assignment. Petitioner was also notified that continued refusal to accept a program *542 assignment could result in a disciplinary proceeding. To date petitioner has not accepted a program assignment, no disciplinary proceeding has been held and petitioner remains in minimum privilege status.
In his petition, petitioner describes the conditions of his minimum privilege status as follows: no commissary privileges, no packages, no phone home privileges, one shower of seven minutes duration each Sunday, and one hour of recreation each day in the “cages”. The specific location of his confinement is within B-2, B-3, B-4 long-term confinement companies and special housing unit overflow. A review of the minimum standards for special housing units, set forth in 7 NYCRR part 301, makes it abundantly clear that petitioner is subject to precisely the same standards as those in special housing. In fact, the respondent makes no effort to argue that petitioner has not been placed in special housing; instead, the issue is skirted by arguing that petitioner’s status is distinguishable from that of other special housing residents in that petitioner can secure his own release at any time by accepting a work assignment. This is perceived by the court to be a distinction without a difference and, more importantly, one which avoids the ultimate issue of whether the respondent has violated the provisions of 7 NYCRR part 304 in placing petitioner in a special housing unit.
7 NYCRR 304.1 and 304.2 set forth the exclusive classifications of and bases for admission of an inmate to a special housing unit, they being used as a reception center, detention center, or diagnostic and treatment center (as these terms are defined in the Correction Law); for outside work gangs or inmates assigned to work release programs; for inmates who are physically unable to participate in the programs of the facility; for inmates assigned there temporarily by the central office reclassification and review team for the purpose of evaluation and reclassification; protective admissions; detention admissions, applying in the case of inmates who are awaiting initial appearance before the adjustment committee; and adjustment admissions, which shall apply in the case of inmates who are confined involuntarily in a special housing unit pursuant to a determination of the adjustment committee or a disposition in a superintendent’s proceeding. Nowhere is refusal to accept a work assignment found.
Respondent does not attempt to argue that petitioner’s detention is based on any of the provisions of 7 NYCRR part 304. Instead, he argues that minimum privilege status does not create a liberty interest subject to Federal due process protec *543 tians, but affords prison officials the necessary broad administrative and discretionary authority to manage institutional programs (Hewitt v Helms, 459 US 460); that petitioner has no constitutional, statutory or regulatory right to a job assignment (Matter of Cooper v Smith, 63 NY2d 615); and that prison administrations must be accorded great deference in administering day-to-day prison routine. All of this is true but irrelevant to what the court perceives to be the issue before it.
Respondent also argues that enactment of the special housing unit regulations does not prevent prison officials from using other means necessary to encourage inmates to accept work and that to rule otherwise would create a pool of idle inmates and limits the discretion of prison officials to manage program committee assignments. The court completely disagrees. 7 NYCRR 304.1 and 304.2 are, by their own terms, exclusive, and the respondent’s discretion is by no means unbridled, as he is as bound by the provisions of 7 NYCRR as are the inmates in his care. Further, the respondent has at his disposal a more than adequate means of dealing with inmates who refuse work assignments and, in fact, to place them in a special housing unit if the refusal is established.
The parties concede that refusal to accept a work assignment can, according to Great Meadow Correctional Facility rule 5.O.J. be classified as an A, B, or C disciplinary violation, subjecting a violator to a tier III (7 NYCRR part 254), tier II (7 NYCRR part 253), or tier I (7 NYCRR part 252) misbehavior proceeding, respectively. If, after compliance with the appropriate requirements of these parts, a finding is made that the inmate has in fact willfully refused a work assignment, appropriate sanctions can be imposed, which sanctions, in the case of class A and B violations, can include loss of good behavior allowance, confinement to cell or special housing unit and loss of privileges (7 NYCRR 253.7, 254.7).
Upon all of the above, the petition is granted. Respondent is directed to release petitioner from minimum privilege status within five days of the within memorandum order unless petitioner is served with an appropriate misbehavior report in the interim and a hearing conducted in a timely manner.