UNITED STATES of America, Plaintiff,

v.

INTERNATIONAL BUSINESS
MACHINES CORPORATION,
Defendant.

Civ. No. 72–344 (DNE).

United States District Court,
S.D. New York.

July 28, 1994.

U.S. Dept. of Justice, Antitrust Div., Washington, DC (Anne K. Bingaman, Kent Brown, Robert B. Nicholson, John J. Powers, III, Joseph Widmar, of counsel), for plaintiff.

Cravath, Swaine & Moore, New York City (Thomas D. Barr, Evan R. Chesler, Richard W. Clary, Peter T. Barbur, of counsel), for defendant.

## OPINION & ORDER

EDELSTEIN, District Judge:

This action was originally filed on January 21, 1952, and resulted in a consent decree entered as a final judgment by this Court on January 25, 1956 ("the 1956 Consent Decree"). By letter dated May 20, 1994, the Government requested a conference with the Court in anticipation of a motion by defendant International Business Machines Corporation ("IBM" or "defendant") to terminate the 1956 Consent Decree. On June 7, 1994, the Court held a conference at which time defendant requested permission to file a motion to terminate the 1956 Consent Decree; this motion was filed on June 13, 1994. Defendant also requested permission to move this Court to recuse itself from this case, pursuant to 28 U.S.C. §§ 144 and 455 and the due process clause of the Fifth Amendment. This recusal motion, filed on June 8, 1994, follows approximately twenty-four years of inactivity in this case.[1] It also follows three prior, unsuccessful recusal motions brought by IBM in unrelated cases.[2]

---

1. The docket sheet indicates that the most recent activity in this case was the entry on December 29, 1970, of an order modifying the 1956 Consent Decree.

 Defendant's first recusal motion in *United States v. IBM*, 69 Civ. 200 (S.D.N.Y.), was brought in 1979; this raises the issue of the timeliness of bringing a recusal motion in the instant case, on substantially the same grounds, at this late date. *See In re "Agent Orange" Prod. Liab. Litig.*, 996 F.2d 1425, 1439 (2d Cir.1993) ("It is well-settled that a party must raise its claim of a district court's disqualification at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim."); *Cf. In re IBM*, 618 F.2d 923, 932-33 (2d Cir.1980) (deeming IBM's 1979 recusal motion untimely). The Government raises this objection in its papers. *See Memorandum of the United States in Opposition to IBM's Motion to Disqualify Judge Edelstein*, at 4 n. 3. Since the Court finds defendant's motion to be devoid of merit, however, I need not address the Government's argument concerning the timeliness of defendant's motion.

2. *See United States v. IBM*, 475 F.Supp. 1372 (S.D.N.Y.1979), *aff'd*, 618 F.2d 923 (2d Cir. 1980); *United States v. IBM*, 539 F.Supp. 473

This Court has deferred taking any further action in this case until after ruling on defendant's recusal motion. For the reasons discussed below, defendant's recusal motion is denied.

## DISCUSSION

■ 28 U.S.C. § 144 states:

Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

Section 455(b)(1) provides for recusal when a judge "has a personal bias or prejudice concerning a party." Sections 144 and 455(b)(1) are construed *in pari materia,* and the test of legal sufficiency of a motion for recusal is the same under both statutes. *See Apple v. Jewish Hosp. and Medical Ctr.,* 829 F.2d 326, 333 (2d Cir.1987).

■ Section 455(a) states that "[a]ny justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." When construing whether recusal is appropriate under section 455(a), courts are to apply an objective test: "The substantive standard for recusal is whether a reasonable person, knowing all the facts, would conclude that the court's impartiality might reasonably be questioned." *United States v. Pitera,* 5 F.3d 624, 626 (2d Cir.1993) (quoting *Apple,* 829 F.2d at 333), *cert. denied,* —— U.S. ——, 114 S.Ct. 1103, 127 L.Ed.2d 415 (1994); *see In re Drexel Burnham Lambert Inc.,* 861 F.2d 1307, 1313 (2d Cir.1988), *cert. denied,* 490 U.S. 1102, 109 S.Ct. 2458, 104 L.Ed.2d 1012 (1989). Recusal motions are committed to the sound discretion of the district court. *United States v. Lovaglia,* 954 F.2d 811, 815 (2d Cir.1992).

■ A judge is obligated not to recuse himself when grounds for recusal do not exist. *See Drexel,* 861 F.2d at 1312. "In deciding whether to recuse himself, the trial judge must carefully weigh the policy of promoting public confidence in the judiciary against the possibility that those questioning his impartiality might be seeking to avoid the adverse consequences of his presiding over their case." *Id.* at 1312; *see United States v. Helmsley,* 760 F.Supp. 338, 341–42 (S.D.N.Y. 1991). Therefore, recusal is not warranted for "remote, contingent, or speculative" reasons. *Drexel,* 861 F.2d at 1313. Any other rule would bestow upon litigants the power to force the disqualification of judges who are not to their liking. While litigants are entitled to an impartial judge, they have no right to the judge of their choice. *See id.* at 1315.

### 1. The Current Litigation

■ In its motion papers, defendant does not argue that this Court has ever exhibited improper bias in this case, save for one recent incident: During the June 7, 1994 conference the Court withheld permission to file the motion to vacate the 1956 Consent Decree. At that time the Court stated, "I think the first matter is to get rid of any obstacle to my remaining in this matter at all, so go ahead with your motion to recuse." *United States v. IBM,* Civ. No. 72–344 (S.D.N.Y.), *Transcript of June 7, 1994 Hearing* ("*Transcript*"), at 9–10. The Court's express concern (shared by defense counsel, *see Transcript,* at 10) was that it would be improper to proceed any further in any case in which a party has brought a motion to recuse the judge. *See Transcript,* at 10. Nonetheless, on June 9, 1994, having reviewed defendant's renewed request contained in a letter dated June 8, 1994, the Court granted IBM permission to file its motion. Notwithstanding the fact that the Court carefully enunciated, on the record, the reasons for each of its actions, defendant describes this incident as "simply another manifestation of his bias and prejudice against IBM," *Memorandum of Law in Support of IBM's Motion to Disqualify Judge Edelstein* ("*Memorandum in Support*"), at 28.

The notion that this incident somehow demonstrates that this Court harbors some sort of bias or prejudice against IBM is

(S.D.N.Y.1982); *Allen–Myland, Inc. v. IBM,* 709 F.Supp. 491 (S.D.N.Y.1989).

ludicrous. Unfortunately, it is also typical of defendant's tendency to allege bias and prejudice where no reasonable person would perceive the appearance of any bias or prejudice whatsoever. In any event, in the thousands of pages of documents submitted by defendant in support of its motion, this incident is the only example to be found in which defendant even alleges that this Court exhibited bias against IBM in this case. In its memorandum, defendant specifically acknowledges that "[p]rior to that premotion conference, there had been no substantive activity in this docket since 1979 [sic], and all evidence of bias and prejudice arose after that date." *Id.* at 29.

■ Indeed, it would be difficult for defendant to argue that the Court has exhibited bias or prejudice against IBM during the administration of this case considering that, as the Government aptly points out, this Court has ruled in IBM's favor in all prior proceedings involving the 1956 Consent Decree. On May 2, 1957, this Court entered an order permitting IBM to provide services in connection with United States Air Force contracts that it might otherwise have been prohibited from performing under the 1956 Consent Decree. *See United States v. IBM,* Civ. No. 72–344 (S.D.N.Y.), *Transcript of May 1, 1957 Hearing.* On January 14, 1963, when IBM had failed to comply fully with certain divestiture requirements contained in the 1956 Consent Decree, this Court approved an amendment of the 1956 Consent Decree that gave IBM an alternate means of compliance. *See United States v. IBM,* Civ. No. 72–344 (S.D.N.Y.), *Transcript of January 14, 1963 Hearing.* On December 29, 1970, this Court granted IBM's request for a modification of the 1956 Consent Decree that allowed IBM to exercise the rights of a secured creditor under the Uniform Commercial Code. *See United States v. IBM,* Civ. No. 72–344 (S.D.N.Y.) (Stipulation and Order, dated Dec. 29, 1970). In light of this record, the Court's administration of the instant case provides no basis for recusal, and save for the incident discussed above, which simply does not evidence any bias or prejudice against IBM whatsoever, defendant does not even allege that it does.

Instead, defendant argues that this Court's administration of two other cases provides the basis for this Court's disqualification from this case. The essence of defendant's argument is that this Court should disqualify itself from *this* case because of bias or prejudice allegedly exhibited in *two other cases.* In support of this curious proposition, defendant cites *Allen–Myland, Inc. v. IBM,* No. 88 Civ. 7553 (S.D.N.Y.), in which this Court, once again, ultimately *ruled in IBM's favor.*

### 2. The Allen–Myland Case

■ In *Allen–Myland,* plaintiff sought a declaratory judgment that plaintiff's copying of an IBM microcode and certain IBM technical publications was authorized by the 1956 Consent Decree. IBM filed a motion to dismiss the complaint, and simultaneously filed a motion to disqualify this Court from presiding over that case. This Court denied IBM's recusal motion, and IBM thereafter filed a petition for a writ of mandamus in the Second Circuit. In its petition, IBM sought a writ either to require this Court to recuse itself, or in the alternative, to direct dismissal of the complaint. This Court indicated that it would defer ruling on the merits of IBM's motion to dismiss the complaint pending the Second Circuit's consideration of IBM's petition for a writ of mandamus.

The Second Circuit denied IBM's petition. In interpreting this denial, defendant has projected onto the Second Circuit's opinion a tone and message that simply are not there. In denying the petition, the Second Circuit stated:

... Judge Edelstein has been reluctant to rule on the merits of IBM's motion to dismiss AMI's action in the Southern District in the face of IBM's contemporaneous request that he recuse himself. *We are in no way critical ... of the reluctance of Judge Edelstein to rule on the merits in view of the recusal motion.* However, we do not look with favor upon this belated attempt by AMI, based upon a consent decree entered over 32 years ago to which it was not a party, to involve the Southern District of New York in a litigation AMI commenced in Pennsylvania almost four years ago....

Nevertheless, a petition for a writ of mandamus seems, on this record, to be an improper procedural vehicle to test AMI's right to attempt in the Southern District to utilize the consent decree as a defense against counterclaims asserted against it in Pennsylvania, because the issue appears to be a question of standing. We believe that Judge Edelstein should promptly rule on IBM's motion to dismiss, which is now pending before him.

*In re IBM*, No. 89–3018, *slip op.* at 3 (2d Cir. June 19, 1989) (emphasis added). In response to the Second Circuit's direction that this Court rule promptly on IBM's motion, this Court filed an opinion on June 20, 1989, the very next day, *granting* IBM's motion. Defendant states that the above-quoted language "[s]uggest[s] some exasperation that Judge Edelstein was (once again) dragging his feet to IBM's detriment." *Memorandum in Support*, at 25. Given the Second Circuit's explicit approbation of this Court's approach in this matter, quoted and underlined above, it is inconceivable that any reasonable person could concur with defendant's interpretation of the language of the opinion. Likewise, defendant's averment that this opinion somehow represents the culmination of the Second Circuit's "increasing weariness concerning Judge Edelstein's unusual conduct toward IBM," *id.* at 20, is patently fanciful. In an adversary system, exaggeration and hyperbole understandably find their way into many legal briefs; more troubling is defendant's tendency to misrepresent the clear language of the Court of Appeals.

In any event, *Allen–Myland* provides no support for defendant's allegation that this Court has exhibited bias or prejudice against IBM in cases other than the instant case. Absolutely nothing in the history of that litigation even suggests bias or prejudice on the part of this Court, particularly in view of the Court's ultimate ruling *in favor* of IBM, which served to dismiss the complaint.

### 3. The 1969 Case

■ The bulk of defendant's motion papers are devoted to an attack on this Court's administration of *United States v. IBM*, 69 Civ. 200 (S.D.N.Y.) ("the 1969 Case"), a case that is wholly unrelated to the instant case. The 1969 Case was dismissed approximately twelve years ago and there has been no further activity in that case since that time.[3] Twice during the litigation of the 1969 Case, IBM filed a motion to disqualify this Court from remaining on the case; both motions were unsuccessful. Nonetheless, defendant has resubmitted the voluminous exhibits originally submitted to the Court on July 19, 1979, in support of IBM's first recusal motion, and has resurrected many of the arguments IBM presented in 1979. This motion was denied by this Court on September 11, 1979. *See United States v. IBM*, 475 F.Supp. 1372 (S.D.N.Y.1979). This Court's decision was affirmed by the Second Circuit on February 25, 1980. *See In re IBM*, 618 F.2d 923 (2d Cir.1980).

The Second Circuit's opinion rejecting IBM's allegations is instructive because it exposes the insufficiency of the factual bases tendered in support of those allegations. Defendant contends that the Supreme Court's recent decision in *Liteky v. United States*, —— U.S. ——, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994) so changes the legal standard for recusal that the Second Circuit's 1980 opinion is no longer valid. As discussed

---

**3.** Defendant also argues that this Court's comments to the press following dismissal of the 1969 Case support defendant's allegations of bias or prejudice against IBM. Yet these comments concerned a government official, not IBM. In any event, since these comments were based on this Court's observations during the preceding trial of the 1969 Case, they do not support an allegation of bias or prejudice against IBM. *See United States v. Barry*, 961 F.2d 260, 263 (D.C.Cir.1992) ("[R]emarks reflecting even strong views about a defendant will not call for a judge's recusal so long as those views are based on his own observations during the performance of his judicial duties.").

Defendant's reference to various articles in the press is similarly unavailing. As the Second Circuit has stated,

> Judicial inquiry may not ... be defined by what appears in the press. If such were the case, those litigants fortunate enough to have easy access to the media could make charges against a judge's impartiality that would effectively veto the assignment of judges. Judge-shopping would then become an additional and potent tactical weapon in the skilled practitioner's arsenal.

*Drexel*, 861 F.2d at 1309.

below, defendant's legal argument misinterprets *Liteky*. More importantly, however, it is clear from the Second Circuit's opinion that had *Liteky* been decided fifteen years ago, defendant's allegations would still have failed to establish a valid basis for recusal. After reviewing the evidence, the Second Circuit rejected IBM's allegations as simply without support in the record. *Liteky* does not alter this conclusion.

For example, in response to IBM's allegation, premised on a statistical summary, that this Court's rulings on various motions demonstrated bias or prejudice against IBM,[4] the Second Circuit remarked, "While the computers have obviously been running overtime, the relevance of the statistics they have spawned to the issue of judicial bias is highly questionable." *In re IBM*, 618 F.2d at 929 n. 8. The Second Circuit concluded:

> There is no authority for, and no logic in, assuming that either party to a litigation is entitled to a certain percentage of favorable decisions.... There is no ruling or comment by the judge which gives any clue or inkling of extrajudicial bias against IBM. If material legal or factual error has been committed it can be dealt with on plenary appeal.

*Id.* at 930. Elsewhere in the opinion, the Second Circuit remarked:

> A trial judge must be free to make rulings on the merits without the apprehension that if he makes a disproportionate number in favor of one litigant, he may have created the impression of bias. Judicial independence cannot be subservient to a statistical study of the calls he has made during the contest.

*Id.* at 929.

 In response to IBM's allegation that this Court treated its witnesses with "asperity, incivility, and hostility," the Second Circuit stated:

> What may be a simple technical issue to the expert witness or even to IBM counsel, who have been given technical training in preparation for this litigation, may well be arcane to the jurist. His questioning, his interruption, his insistence on clarification may well be prompted by his struggle to determine the truth in a field in which he is not sophisticated. His asperity may well be prompted by a feeling that the witnesses for IBM (three are long time employees) are dissembling. We do not know and cannot on this record determine whether his conduct has been guided by what he has learned during the trial, in which case his reaction is licit, or whether it is due to a personal prejudice which is clearly impermissible. The point is that IBM has not met its burden of showing that the Chief Judge is personally biased against the petitioner.

*Id.* at 931. In response to IBM's allegations regarding this Court's treatment of IBM's counsel,[5] the Second Circuit concluded:

> We have examined the record and are persuaded that while occasional flareups toward counsel have undoubtedly occurred, there is no indication that this is other than sporadic. Such isolated instances are undoubtedly endemic to a trial of this dimension, and do not provide any basis for finding personal prejudice against IBM, as distinct from its counsel.

*Id.* at 932.

Here again, it should be noted that defendant's representation of the Second Circuit's language is misleading. Defendant's brief

---

4. The Government's position on this issue should be noted: "The United States counters that some 70% of these motions were made by IBM, which allegedly has adopted an increasingly hostile and uncooperative trial strategy, making unnecessary or frivolous objections for the purpose of creating the very statistics upon which it now depends." *In re IBM*, 618 F.2d at 929.

5. It should be noted that "courts have drawn a sharp distinction between alleged hostility between judge and party and alleged hostility between judge and attorney." *Helmsley*, 760

F.Supp. at 342. Recusal based on the alleged appearance of hostility between an attorney and judge, or bias by a judge against an attorney, is not warranted except in extreme or rare instances. *See id.; see also Panzardi–Alvarez v. United States*, 879 F.2d 975, 984 (1st Cir.1989) (it is rare when judge's attitude toward party's counsel is so hostile that judge is rendered unable to remain impartial toward client), *cert. denied*, 493 U.S. 1082, 110 S.Ct. 1140, 107 L.Ed.2d 1045 (1990).

declares, "Throughout its opinion ... expressions of the Court of Appeals' displeasure at Judge Edelstein's conduct were unmistakable." *Memorandum in Support,* at 22–23. What are these "unmistakable" expressions? Defendant's memorandum states that "the Court of Appeals ... said that Judge Edelstein had engaged in 'intemperate behavior.'" *Id.* at 23. In fact, the full text from which defendant pulls this phrase reads:

> Although we cannot condone intemperate behavior on the part of *a* trial judge, we have observed following a trial of only nine days, "Judges, while expected to possess more than the average amount of self-restraint, are still only human. They do not possess limitless ability, once passion is aroused, to resist provocation."

618 F.2d at 932 (emphasis added) (quoting *United States v. Weiss,* 491 F.2d 460, 468 (2d Cir.), *cert. denied,* 419 U.S. 833, 95 S.Ct. 58, 42 L.Ed.2d 59 (1974)). I do not interpret this passage as an "unmistakable expression of the Second Circuit's displeasure." Defendant's memorandum also states that "the Court of Appeals ... said that Judge Edelstein had engaged in ... 'flareups toward counsel.'" *Memorandum in Support,* at 22. The full text from which this phrase is pulled reads, "We have examined the record and are persuaded that while occasional flareups toward counsel have undoubtedly occurred, there is no indication that this is other than sporadic. Such isolated instances are undoubtedly endemic to a trial of this dimension ..." 618 F.2d at 932. I doubt that any reasonable person reading the Second Circuit's opinion would find an "unmistakable expression of displeasure" in these words.[6] The reader quickly discerns a sharp distinction between the Second Circuit's actual

opinion and the opinion as interpreted by defendant.

In its opinion, the Second Circuit observed that "IBM has not shown and does not purport to establish or identify any personal connection, relationship or extrajudicial incident which accounts for the alleged personal animus of the trial judge. IBM's claim of prejudice is based completely on Chief Judge Edelstein's conduct and rulings in the case at hand." *Id.* at 928. Having reviewed IBM's various claims, the Second Circuit concluded that "the rulings and conduct of the trial judge complained of here are legally insufficient to warrant recusal under Title 28, §§ 144, 455 or under the due process clause of the Fifth Amendment of the United States Constitution." *Id.* at 932.

Defendant avers that this ruling is invalid in light of the Supreme Court's recent decision in *Liteky v. United States,* —— U.S. ——, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). *Liteky* involved a recusal motion brought pursuant to 28 U.S.C. § 455(a). In affirming the Eleventh Circuit's affirmance of the district court's denial of the recusal motion, the Supreme Court noted that "[t]he fact that an opinion held by a judge derives from a source outside judicial proceedings is not a *necessary* condition for 'bias or prejudice' recusal, since predispositions developed during the course of a trial will sometimes (albeit rarely) suffice." *Liteky,* —— U.S. at ——, 114 S.Ct. at 1157 (emphasis in original). The *Liteky* Court was careful to emphasize the narrowness of the set of circumstances that would warrant recusal when the moving party does not allege that the judge's alleged bias or prejudice derives from an extrajudicial source:

> Finally, defendant states that the Court of Appeals "criticized Judge Edelstein for permitting 'overly liberal discovery.'" *Memorandum in Support,* at 22. In reality, the Court of Appeals merely stated that "both sides have had liberal and perhaps overly liberal discovery both before and during trial," 618 F.2d at 933, and noted that "[u]ntil a decision on the merits has been made, the material issues fixed, the wheat hopefully separated from the chaff, we cannot make any determination as to the propriety of any ruling in this monstrous record," *id.*

---

6. Likewise, defendant's representation that the Court of Appeals was expressing displeasure when it observed that there was "no question but that these witnesses have felt that the judge's conduct was intimidating," 618 F.2d at 930, is at best highly misleading. The paragraph that begins with this sentence continues on to note that "the trial judge has the obligation to form judgments as to the veracity of the witnesses before him," *id.,* and concludes by rejecting IBM's contention, stating "Accepting all of these contentions at face value we do not find them to be of the stuff upon which one can sensibly premise extrajudicial bias," *id.*

First, judicial rulings alone almost never constitute valid basis for a bias or partiality motion. In and of themselves (*i.e.*, apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required ... when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal. Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.

*Id.* (emphasis in original) (citation omitted). Defendant seizes upon this narrow exception, however, and alleges that this Court, many years ago, displayed a "deep seated antagonism" that would "make fair judgment impossible" in the instant case.

▆▆ As the preceding discussion of the Second Circuit's opinion in *United States v. IBM*, 618 F.2d 923 (2d Cir.1980), makes clear, IBM failed to establish a basis for recusal not because the legal standard was somehow more strict at that time, but rather because IBM's allegations were without factual support in the record. This failure is not negated by reference to the above-quoted language. The Second Circuit's explicit rejection of IBM's allegations as "insufficient to

warrant recusal" clearly did not contemplate that if the standard for recusal had been "the presence of a deep-seated antagonism that would make fair judgment impossible," the decision would have been otherwise. Contrary to defendant's argument, the *Liteky* Court's clarification of the extrajudicial source doctrine does not transform an allegation that has thrice before been rejected into a valid basis for recusal. Simply put, defendant's allegations clearly do not meet the standard for recusal enunciated in *Liteky*.

The *Liteky* Court was careful to provide an example that is instructive in distinguishing the types of conduct that would and would not merit recusal:

> An example of [judicial remarks that demonstrate a high degree of favoritism or antagonism as to make fair judgment impossible] is the statement that was alleged to have been made by the District Judge in *Berger v. United States*, 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1921), a World War I espionage case against German–American defendants: "One must have a very judicial mind, indeed, not [to be] prejudiced against the German Americans" because their "hearts are reeking with disloyalty." *Id.*, at 28 [41 S.Ct. at 231]. *Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune.

—— U.S. at ——, 114 S.Ct. at 1157 (emphasis in original). Far from providing support for defendant's recusal motion, *Liteky* serves only to reinforce prior rulings of this Court and the Court of Appeals that found IBM's allegations of bias and prejudice devoid of merit. In finding the petitioner's claims [7] in

---

**7.** The allegations of bias and prejudice rejected by the Supreme Court in *Liteky* are remarkably similar in nature to those brought by defendant in the instant case. The Supreme Court described the allegations underlying the recusal motion at issue in *Liteky* in the following manner:

> None of the grounds petitioners assert required disqualification. As we have described, petitioners' first recusal motion was based on rulings made, and statements uttered, by the District Judge during and after the 1983 trial; and petitioner Bourgeois' second recusal motion was founded on the judge's admonishment of

Liteky to be without merit, the Supreme Court stated:

All of these grounds are inadequate under the principles we have described above: They consist of judicial rulings, routine trial administration efforts, and ordinary admonishments (whether or not legally supportable) to counsel and to witnesses. All occurred in the course of judicial proceedings, *and* neither (1) relied upon knowledge acquired outside such proceedings nor (2) displayed deep-seated and unequivocal antagonism that would render fair judgment impossible.

*Id.* at ——, 114 S.Ct. at 1158 (emphasis in original). The Supreme Court's conclusion in *Liteky* is equally applicable to the instant motion. Accordingly, defendant has failed to establish the statutory grounds for recusal.

 This discussion of defendant's allegations pursuant to 28 U.S.C. §§ 144 and 455 implicitly addresses defendant's Fifth Amendment due process allegation. A rejection of defendant's allegations under sections 144 and 455 "*a fortiori* defeats its due process allegations." *In re IBM,* 618 F.2d at 932 n. 11. The recusal statutes were designed to protect Fifth Amendment guarantees, and therefore "it would be anomalous to hold that a claim under the statutes insufficient on its merits could nevertheless satisfy the constitutional standard." *Id.* Because this Court finds defendant's allegations of bias and prejudice to be without merit under the standards enunciated by the recusal statutes, defendant's argument for recusal pursuant to the due process clause of the Fifth Amendment must also be rejected.

### CONCLUSION

I have carefully reviewed defendant's motion and find it to be without merit. Accordingly, defendant's motion to disqualify this Court is denied.

Defendant, or defendant's counsel, apparently is determined to bring a motion for

recusal each time IBM appears before this Court. At this point, considerable judicial resources have been expended reviewing time and again what is clearly a contention devoid of merit. Furthermore, these motions flout the important policies against removing judges from cases for frivolous reasons. *See Drexel,* 861 F.2d at 1312; *Helmsley,* 760 F.Supp. at 341–42.

Nevertheless, I have patiently reviewed IBM's first, second, third, and fourth recusal motions. As I have stated in the past, "Now, as before, 'this Court has no interest in the outcome of this case other than the interest of every judicial officer that the truth be discovered and the law correctly applied.'" *Allen–Myland, Inc.,* 709 F.Supp. at 495 (quoting *United States v. IBM,* 475 F.Supp. at 1391).

SO ORDERED.

---

Bourgeois' counsel and codefendants. In their briefs here, petitioners have referred to additional manifestations of alleged bias in the District Judge's conduct of the trial below, including the questions he put to certain witnesses, his alleged "anti-defendant tone," his

cutting off of testimony said to be relevant to defendants' state of mind, and his post-trial refusal to allow petitioners to appeal *in forma pauperis.*
—— U.S. at —— ——, 114 S.Ct. at 1157–58.