Lawrence DIXON, Plaintiff,

v.

Arthur A. LEONARDO, Superintendent, Great Meadow Correctional Facility; D. Carpenter, Deputy Superintendent of Programs, Great Meadow Correctional Facility; Ronald W. Atkin, Chairman, Program Committee, Great Meadow Correctional Facility; and Thomas A. Coughlin III, Commissioner, NYS Department of Correctional Services, Defendants.

No. 92–CV–640.

United States District Court,
N.D. New York.

May 8, 1995.

Lawrence Dixon, Woodbourne, NY, pro se.

Robert Abrams, Atty. Gen., State of N.Y. (Robert A. Siegfried, Asst. Atty., of counsel), Albany, NY, for defendants.

## MEMORANDUM, DECISION & ORDER

McAVOY, Chief Judge.

Plaintiff Lawrence Dixon brought suit against the above captioned defendants under 42 U.S.C. § 1983, alleging that he was unlawfully placed in a Special Housing Unit ("SHU") for an indefinite period of time without a hearing because he refused to accept a prison job assignment. Furthermore, plaintiff contends that the defendants conspired to deprive him of his rights and that they violated state law.

This matter was referred to Magistrate Judge Daniel Scanlon, Jr. pursuant to a Standing Order dated November 12, 1986. Plaintiff subsequently filed separate motions to disqualify the magistrate judge, to compel discovery, and for partial summary judgment. Defendants filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, or in the alternative, for summary judgment pursuant to Rule 56.

After considering each of the respective motions, the magistrate issued a Report–Recommendation, dated July 6, 1993, in which he recommended (1) denying plaintiff's motion to disqualify; (2) denying plaintiff's motion for summary judgment; (3) denying plaintiff's motion to compel discovery; and (4) granting defendants' motion for summary judgment. Plaintiff requested an extension of time to provide his objections to the magistrate's Report–Recommendation, and was granted until August 16, 1993 in which to do so. Plaintiff subsequently filed his objections.

### I. Discussion

**A. Plaintiff did not have a statutory right to consent before the case was referred to a magistrate for preliminary findings of fact and a recommended disposition of the legal issues in the case.**

Plaintiff made a number of objections to the magistrate's Report–Recommendation.

Plaintiff's first objection is that the present case was improperly referred to a magistrate. He argues that 28 U.S.C. § 636(c)(2) requires that all parties to a matter consent before a case may be referred to a magistrate. He states that he never consented to a magistrate's participation in the case, and he argues that the court's failure to obtain his consent before the referral constituted procedural error. The court finds this objection to be without merit.

Section 636(c)(2), the provision upon which plaintiff erroneously relies, concerns the right of parties to an action to give their consent before a magistrate may exercise civil jurisdiction. After parties give their consent, the magistrate may conduct all of the proceedings in a jury or nonjury civil matter, including ordering the entry of judgment in the case. 28 U.S.C. 636(c)(1)–(2). However, section 636(c) is not applicable in the instant case because the magistrate is not exercising full civil jurisdiction. Instead, the magistrate's involvement in the case is limited to submitting proposed findings of fact and making a recommendation for the disposition of the case, as expressly authorized by 28 U.S.C. 636(b)(1)(B), which does not require the consent of the parties. *See Coleman v. Hutto*, 500 F.Supp. 586 (E.D.Va., 1980) (authority of magistrate to conduct hearing and make recommendation in prisoner case is entirely independent of consent of parties).

### B. Motion to Disqualify the Magistrate.

■ Plaintiff argues that the magistrate's review of plaintiff's motion to disqualify was limited as evidenced by the magistrate's alleged misstatement of the argument set forth in plaintiff's motion papers.[1] He further claims that the magistrate was biased, and he questions the truth of the magistrate's assertion in the Report–Recommendation that the court had not conducted any private conferences with any of the parties.

28 U.S.C. 636(b) requires that this court make a *de novo* determination of those por-

tions of the report to which objection is made. 28 U.S.C. 636(b). Accordingly, this court does so, mindful of plaintiff's objections.

A review of plaintiff's Affidavit in Support of Motion for Disqualification or Recusal of the United States Magistrate Judge ("Affidavit in Support of Disqualification"), reveals the general accuracy of the magistrate's restatement of plaintiff's proffered factual basis for the disqualification. Specifically, plaintiff stated that he was

> made aware by defendants' attorney that they had received a report-recommendation of the Honorable Daniel Scanlon, Jr., United States Magistrate, which recommends granting defendant's motion for summary judgment, and the report-recommendation having duly been considered by the undersigned....

> On the face of defendants' protective order ... reference is given to a "report recommendation of Honorable Daniel Scanlon, Jr.," indicating [a] conference that excluded plaintiff. Said conference gives every indication of what can only be deed [sic] as knavery.

Affidavit in Support of Disqualification at 2. Plaintiff then attached a copy of the protective order as evidence of the alleged secret conference. *Id.* As the magistrate noted, the protective order upon which plaintiff relies is an unsigned and undated proposed form of order submitted by the defendants with their motion papers as required by Local Rule 10(D).

Plaintiff's allegations do not require the disqualification of the magistrate. A judge is required to recuse himself "in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). "When construing whether recusal is appropriate under section 455(a), courts are to apply an objective test: 'The substantive standard for recusal' is whether a reasonable person, knowing all the facts, would conclude that the court's impartiality might be reasonably be questioned." *United States v. IBM*

---

1. The magistrate characterized plaintiff's motion papers as alleging that the magistrate should be disqualified because he rendered a secret Report–Recommendation which had been approved by this court. Report–Recommendation at 2.

*Corp.*, 857 F.Supp. 1089, 1091 (S.D.N.Y.1994) (citing *United States v. Pitera*, 5 F.3d 624, 626 (2d Cir.1993)), *mandamus granted, In re IBM Corp.*, 45 F.3d 641 (2d Cir.1995).

In the instant case, the evidence submitted by plaintiff does not satisfy this objective test. A reasonable person with knowledge and understanding of the proposed order and the context in which it was submitted would have no basis to derive therefrom any indication of judicial bias. Furthermore, "recusal is not warranted for 'remote, contingent, or speculative' reasons." *Id.* (quoting *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1313 (2d Cir.1988)). In the instant case plaintiff's allegations of private conferences and of a secret report-recommendation are purely speculative and therefore are not grounds for the magistrate's disqualification.

### C. Motion for Summary Judgment.
### 1. The Standard for Summary Judgment.

Under Fed.R.Civ.Pro. 56(c), if there is "no genuine issue as to any material fact … the moving party is entitled to a judgment as a matter of law … where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), *on remand, sub nom., In re Japanese Elec. Prods. Antitrust Litig.*, 807 F.2d 44 (3d Cir.1986), *cert. denied*, 481 U.S. 1029, 107 S.Ct. 1955, 95 L.Ed.2d 527 (1987). The burden to demonstrate that no genuine issue of material fact exists falls solely on the moving party, *Heyman v. Commerce and Industry Ins. Co.*, 524 F.2d 1317 (2d Cir.1975), and the trial court must resolve all ambiguities and draw all inferences in favor of that party against whom summary judgment is sought. *Eastway Constr. Corp. v. New York*, 762 F.2d 243, 249 (2d Cir.1985), *on remand*, 637 F.Supp. 558 (E.D.N.Y.1986), *modified*, 821 F.2d 121 (2d Cir.1987), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987).

For the purpose of considering defendants' motion for summary judgment the court will assume plaintiff's version of the facts as stated in his complaint. On December 16, 1991, plaintiff was called to appear before defendant Atkin in the Program Committee room for assignment to a new job program. In the Program Committee room, Atkin asked plaintiff what type of job or program he was interested in. In response, plaintiff told Atkin that he was interested in his old clerk position in the general library. Atkin told plaintiff that the position was not available at that time and that plaintiff would be placed on a waiting list for that position. Then Atkin told plaintiff that the only position available was that of porter or messhall worker. Plaintiff immediately rejected the offered position because he believed or felt that the offered assignment was degrading and inappropriate in light of his previous employment as a law library clerk. As a result of plaintiff's refusal or failure to accept the job or program assignment, Atkin advised him that "he would be assigned to the restricted confinement of limited privileges status until plaintiff accept[ed] a job or program assignment by the defendant." Atkin then handed plaintiff a typed copy of the policy or the procedure, which set forth the details of the Limited Privileges Program, and stated that plaintiff could regain his privileges by indicating his willingness to accept the assignment considered appropriate by the program committee. Plaintiff was then escorted to his cell and placed in keeplock. On December 17, 1991, plaintiff was removed from the general population and placed in a Special Housing Unit without any additional hearing. Civil Rights Complaint with a Jury Demand at pp. 3–4 ("Complaint").

It is with these facts and considerations in mind that the court addresses the question of whether or not plaintiff was denied due process.

### 2. Due Process.

"As a general rule, resolution of a procedural due process claim requires a determination of whether the plaintiff was deprived of a constitutionally protected interest and, if so, whether the procedures used were adequate given the nature of the deprivation contemplated." *Morgan v. Ward*, 699 F.Supp. 1025, 1037 (N.D.N.Y.1988) (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 1153–54, 71 L.Ed.2d 265 (1982)). These two issues will be taken up in turn.

### a. Existence of a protected liberty interest.

The preliminary question which must be addressed is whether or not plaintiff has a protected liberty interest in remaining free from administrative segregation in a Special Housing Unit based on his failure to accept an assigned job or work program. A liberty interest protected by the Fourteenth Amendment may arise from one of two possible sources: the Due Process Clause of the Constitution and the laws of the States. *Hewitt v. Helms,* 459 U.S. 460, 466, 103 S.Ct. 864, 868, 74 L.Ed.2d 675 (1983). However, the Due Process Clause does not independently create a liberty interest in remaining free from administrative segregation. *Id.* at 468, 103 S.Ct. at 869–70; *Russell v. Coughlin,* 910 F.2d 75, 77 (2d Cir.1990); *Sher v. Coughlin,* 739 F.2d 77, 81 (2d Cir.1984). Accordingly the inquiry shifts to state law to see whether New York has created such a liberty interest. *See Hewitt* at 469, 103 S.Ct. at 870. *Russell,* 910 F.2d at 77; *Sher,* 739 F.2d at 81.

A liberty interest may be created by state regulations. *Hewitt,* 459 U.S. at 469, 103 S.Ct. at 870; *McMillan v. Scully,* No. 85 Civ. 7280, 1986 WL 7543 (JFK) (S.D.N.Y. 1986), *aff'd mem.,* 814 F.2d 653 (2d Cir.1987), *cert. denied,* 481 U.S. 1071, 107 S.Ct. 2466, 95 L.Ed.2d 874 (1987). In the instant case, 7 N.Y.C.R.R. 251–1.6 (1989) suffices to establish plaintiff's liberty interest. By establishing a regulation whereby the inmate must refuse to participate in a program prior to being placed in administrative segregation, the state has created a "substantive prerequisite" to detention which is sufficient to implicate a liberty interest. *Hewitt,* 459 U.S. at 471, 103 S.Ct. at 871; *McMillan,* No. 85 Civ. 7280 (JFK) at 8; *see also Aviles v. Scully,* No. 87 Civ. 0160 (SWK) at 1, 1989 WL 8667 (S.D.N.Y.1989) (District Court Judge Kram specifically agreeing with the Due Process analysis in *McMillan* ).

### b. Adequacy of the Procedures Received.

According to plaintiff's version of the facts as stated in his complaint, plaintiff was informed, both verbally and in writing, that his failure to accept a program or job assignment could result in his being placed on limited privileges status, and he had an opportunity to explain his justification for rejecting or failing to accept the job assignment. Complaint at 3; *see supra* Part I.C.1. Plaintiff contends that he was entitled to a full hearing as required by "state statute or regulations" before being placed in administrative confinement in a Special Housing Unit. Pro Se Plaintiff's Objections to United States Magistrate Judge's Report and Recommendation at 5 ("Objections"). The issue to be decided is whether or not the process which plaintiff was afforded was Constitutionally sufficient. For the reasons set forth *infra,* I conclude that in the situation presented by this case, the due process clause requires only a minimal level of procedural safeguards, and that the procedures afforded to the plaintiff were sufficient.

"The requirements imposed by the [Due Process] clause are, of course flexible and variable dependent upon the particular situation being examined." *Hewitt,* 459 U.S. at 472, 103 S.Ct. at 871; *accord Zinermon v. Burch,* 494 U.S. 113, 127, 110 S.Ct. 975, 984, 108 L.Ed.2d 100 (1990). Courts have drawn a distinction between disciplinary and administrative segregation, and have concluded that prisoners who are segregated for administrative reasons are entitled to fewer procedural protections than those who are segregated for disciplinary reasons. *See Matiyn v. Henderson,* 841 F.2d 31, 34 (2d Cir.1988), *cert. denied, Abdul–Matiyn v. Henderson,* 487 U.S. 1220, 108 S.Ct. 2876, 101 L.Ed.2d 911 (1988); *Gomez v. Coughlin,* 685 F.Supp. 1291, 1296–97 (S.D.N.Y.1988).

Determining the appropriate due process requirements requires a balancing of the respective interests involved:

> To determine the specific requirements of due process in a particular case, a court must consider the interest of the private individual at issue, the risk that an erroneous deprivation of the private interest will occur because of the procedures being used, the benefits that might result from additional or alternative procedural safeguards, and the governmental interests, including fiscal and administrative concerns, that are implicated.

*Morgan,* 699 F.Supp. at 1037 (citing *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, ——, 47 L.Ed.2d 18 (1976)); *see also Zinermon v. Burch,* 494 U.S. at 127, 110 S.Ct. at 984.

The Supreme Court applied the *Mathews* balancing approach in *Hewitt,* 459 U.S. at 473, 103 S.Ct. at 872. *Hewitt* involved an inmate who held a protected liberty interest which was created by a state regulation. The inmate was placed in administrative segregation without a full hearing. The Supreme Court held that only minimal process was due such an inmate. The Court noted that "[p]rison administrators ... should be accorded wide ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline ..." *Hewitt,* 459 U.S. at 472, 103 S.Ct. at 872. In contrast when describing the nature of the prisoner's private interest, the Court stated: "[the prisoner's] private interest was not one of great consequence. He was merely transferred from one extremely restricted environment to an even more confined situation." *Hewitt,* 459 U.S. at 473, 103 S.Ct. at 872.[2] Ultimately, the Court concluded that an informal, nonadversary evidentiary review is sufficient to confine an inmate to administrative segregation:

> An inmate must merely receive some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation. Ordinarily a written statement by the inmate will accomplish this purpose, although prison administrators may find it more useful to permit oral presentations in cases where they believe a written statement would be ineffective.

*Hewitt,* 459 U.S. at 476, 103 S.Ct. at 874; *see also Matiyn v. Henderson,* 841 F.2d 31, 36

(2d Cir.1988) (citing *Hewitt*); *Garrido v. Coughlin,* 716 F.Supp. 98, 102 (S.D.N.Y.1989) (citing *Hewitt*).

The present case is factually similar to *Hewitt.* In the present case, plaintiff has been placed in administrative segregation. Prior to being placed in either keeplock or the Special Housing Unit, plaintiff was informed of the charges against him, namely, his refusal to accept the job which the program committee assigned. Plaintiff was then given the opportunity to orally present his views to the prison official who was charged with transferring him to administrative segregation. Plaintiff maintained his previous position that the assigned job was degrading. He refused to accept the assigned program and was subsequently placed in keeplock. The following day he was placed in the Special Housing Unit.

Applying the *Mathews v. Eldridge* factors to the foregoing facts to determine the appropriate due process requirements, it is clear that plaintiff, having received notice of the charges against him and being afforded an opportunity to present his views to defendant Atkin, received constitutionally sufficient procedural safeguards prior to being placed in the Special Housing Unit.

The first factor to be considered under *Mathews* is the interest of the private individual at issue. The Supreme Court has held that the interest of a prisoner in remaining free from administrative segregation is not of great consequence. *Hewitt,* 459 U.S. at 473, 103 S.Ct. at 872.

Secondly, there is little risk that an erroneous deprivation of the interest would occur because of the procedures used. In the instant case, plaintiff candidly admits that he refused to accept his job program assignment because he felt it was degrading. In light of such refusal—uncontroverted and

---

**2.** Furthermore, plaintiff's confinement in the SHU, on the facts of this case, does not, as he contends, amount to cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. *Bono v. Saxbe,* 620 F.2d 609, 612 (7th Cir.1980). Likewise, "inactivity, lack of companionship and a low level of intellectual stimulation do not constitute cruel and unusual punishment...." *Id.* at 614. "For conditions" to transgress the constitutional prohibition

against cruel and unusual punishment, they must be "so harsh as to shock the general conscience," *Id.* at 613, or "result in an unquestioned and serious deprivation of basic human needs." *Caldwell v. Miller,* 790 F.2d 589, 601 n. 16 (7th Cir.1986) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)). Plaintiff has not alleged facts sufficient to satisfy the foregoing standards in any of his pleadings or affidavits.

made directly to the prison official in charge of transferring him to administrative segregation—it seems improbable that an erroneous deprivation of his interest either has occurred or is likely to occur. Likewise, where an inmate admittedly refuses to participate in a prison program and conveys his refusal to the appropriate official, there seems to be few benefits which might result from additional or alternative procedural safeguards.

Finally, the prison officials have a relatively strong interest in maintaining order in the prison and encouraging inmates to comply with mandatory programs as part of their rehabilitation. As one court noted:

[T]he isolation of inmates who refuse to participate in a program serves a security need of the prison, which ... is operated on the principal of universal program participation. If such inmates were not confined, it would be difficult to monitor their activities during the day. Moreover, their presence in the general prison population might well prove disruptive to the facility's goal of encouraging all inmates to participate in work or educational programs. Consistent with the goal of encouraging balking inmates to conform to the institutional policy that all inmates must participate in a work program, the inmate placed [on limited privileges status and confined in the Special Housing Unit], unlike inmates sentenced for a behavioral infraction, has the ability to end his segregation at any time by accepting a work assignment. This distinction is crucial and reflects a striking parallel to the distinction that the courts have long drawn between civil and criminal contempt.

*Farinaro v. Coughlin,* No. 84 Civ. 858 (SWK), 1993 WL 485729 (S.D.N.Y.1993) (citations omitted).

Based on a balancing of the foregoing factors, plaintiff was entitled only to the minimal procedural safeguards set forth in *Hewitt,* namely, notice of the charges against him and an opportunity to present his views. As noted above, the undisputed facts indicate that defendants afforded plaintiff a constitutionally sufficient procedural safeguard.[3]

Plaintiff argues that defendants did not properly inform him in writing that his refusal of the Program Committee's job assignment would result in his confinement in a Special Housing Unit on December 17, 1991.[4] However, *Hewitt* and its progeny do not require for due process purposes that the *consequences* of a given charge be communicated to an inmate. Notice of the charges and an opportunity to respond within a reasonable time are all that the Due Process Clause requires.

Finally, plaintiff argues that *Jones v. Jones,* 127 Misc.2d 541, 486 N.Y.S.2d 674, (N.Y.Sup.Ct. Washington County 1985), com-

**3.** Furthermore, in light of a recent decision by the Second Circuit in *Lowrance v. Achtyl,* 20 F.3d 529 (2d Cir.1994), petitioner may have actually received more process than necessary to satisfy the minimum due process requirements. In that case the Second Circuit held that plaintiff had been given an opportunity to be heard when he wrote to the officer in charge of his confinement. The plaintiff's written statement constituted his opportunity to present his views sufficiently to satisfy the minimum due process requirement. The court did not deem it important that the letter was not answered. *Id.*

Moreover, plaintiff was given his opportunity to be heard *prior* to being placed in administrative segregation, when due process requires merely that an inmate have an opportunity to be heard within a reasonable time after his confinement. *Hewitt,* 459 U.S. at 473, 103 S.Ct. at 872; *Gittens v. LeFevre,* 891 F.2d 38, 41 (2d Cir.1989). A full administrative hearing is not necessary. As the Second Circuit explained in *Wright v. Smith,* 21 F.3d 496 (2d Cir.1994), the Supreme Court did not intend to constitutionalize all as-

pects of state procedure bearing on placement in restrictive confinement, but only those procedures which channel decision making, *i.e.,* those that establish the substantive predicates for the decision maker's action. *Id.* at 499. The substantive predicate underlying plaintiff's administrative segregation was his refusal to accept a job. The Tier I, II, or III proceedings do not channel decision making in the context of the type of *administrative segregation presented by* this case. Instead they establish procedures which are a matter of guidance for state officials. However, such procedures do not alter the appropriate minimum due process requirements. *See Hewitt,* 459 U.S. at 476, 103 S.Ct. at 873–74; *Matiyn v. Henderson,* 841 F.2d at 36; *Garrido v. Coughlin,* 716 F.Supp. at 102; *Aviles v. Scully,* No. 87 Civ. 0160 (SWK); *McMillan,* No. 85 Civ. 7280 (JFK).

**4.** Plaintiff was notified in writing that he would be placed on limited privileges status.

pels a different result. In *Jones,* an inmate was assigned to minimum privilege status based on his refusal to accept a job assignment. *Jones* at 675. In that case, the court held that the inmate was entitled to a full hearing before being confined under minimum privileges status. *Jones* is distinguishable from the present case in that it deals with a different set of regulations than those in effect when the events forming the basis for this suit occurred. Furthermore, in making its determination that an inmate must receive a formal hearing in satisfaction of due process before being so confined, the *Jones* court—a state trial court—ignored or dismissed long-standing federal court and Supreme Court precedent on the procedures necessary to fulfill the minimum due process requirements under the Federal Constitution. Accordingly, I decline to follow the decision in that case.

### D. Motion To Compel Discovery

After examining the record, the court finds that the magistrate judge's recommendation to deny plaintiff's motion to compel discovery is not subject to attack for plain error or manifest injustice. Therefore, the court hereby adopts the magistrate's Report–Recommendation insofar as it denies plaintiff's motion to compel discovery.

### Conclusion.

The court finds each of plaintiff's objections to the Report–Recommendation, dated July 6, 1993, to be without merit. Accordingly, defendants' motion for summary judgment is granted. Plaintiff's cross-motion for summary judgment, plaintiff's motion to disqualify the magistrate judge, and plaintiff's motion to compel discovery are each, respectively, denied.

**IT IS SO ORDERED.**