**In re INTERNATIONAL BUSINESS MACHINES CORPORATION, Petitioner.**

**Docket 94–3071.**

United States Court of Appeals, Second Circuit.

Submitted Oct. 3, 1994.

Decided Jan. 17, 1995.

Thomas D. Barr, Evan R. Chesler, Richard W. Clary, Peter T. Barbur, Cravath, Swaine & Moore, New York City, submitted briefs, for petitioner.

Robert E. Litan, Acting Asst. Atty. Gen., Diane P. Wood, Deputy Asst. Atty. Gen., Robert B. Nicholson, John J. Powers, III, Kent Brown, U.S. Dept. of Justice, Washington, DC, submitted a brief, for U.S.

Before: JON O. NEWMAN, Chief Judge, KEARSE and WINTER, Circuit Judges.

JON O. NEWMAN, Chief Judge:

International Business Machines Corporation ("IBM") petitions for a writ of mandamus directing a district judge to recuse himself from the case of *United States v. IBM,* Civil Action No. 72–344 (S.D.N.Y.) (DNE) ("the 1952 Case") and to reassign the litigation. Though it is a rare case when a district judge's denial of a motion to recuse is disturbed by an appellate court and rarer still when such a denial is remedied on a petition for mandamus, we have concluded, for reasons set forth, that mandamus is warranted in this instance.

## Background

The 1952 Case is a civil antitrust suit brought by the United States against IBM in 1952. Ever since its filing, the suit has been assigned to Judge David N. Edelstein, one of the ablest and most experienced judges of the distinguished trial bench of the Southern District of New York. The 1952 Case resulted in a consent decree, approved by Judge Edelstein and entered as a judgment in 1956. By stipulation of the parties, the consent decree was amended in 1963 and again in 1970. Since 1970, no activity has occurred in the 1952 Case until mid–1994, when IBM filed two motions. The first sought termination of the amended 1956 consent decree. The second sought the recusal of Judge Edelstein. Judge Edelstein denied the recusal motion on July 28, 1994, *United States v. International Business Machines Corp.,* 857 F.Supp. 1089 (S.D.N.Y.1994), and has deferred consideration of the motion to terminate the consent decree until disposition of the pending motion for a writ of mandamus.

The recusal motion and the pending mandamus petition arise primarily from events concerning a second civil antitrust suit brought by the United States against IBM in 1969, *United States v. IBM,* Civil Action No. 69–200 (S.D.N.Y.) (D.N.E.) ("the 1969 Case"). The 1969 Case was assigned to Judge Edelstein as a "related case." A bench trial on liability began in 1975. Nearly seven years later, with the liability trial still in progress, the Government stipulated to a dismissal of the suit pursuant to Fed.R.Civ.P. 41(a)(1). *See In re International Business Machines Corp.,* 687 F.2d 591 (2d Cir.1982) ("*1982 Mandamus*"). The stipulation, signed for the United States by William F. Baxter, the Assistant Attorney General in charge of the Antitrust Division, recited that the United States had concluded that the case was "without merit." *Id.* at 594.

Of the various events that ensued in the District Court following the stipulation for dismissal of the 1969 Case, three in particular need to be identified. First, Judge Edelstein "sharply criticized Mr. Baxter's decision to dismiss the case," *id.,* and "conducted a hearing calling into question Mr. Baxter's role in the Justice Department's decision to dismiss the action," *id.* at 594–95. Second, Judge Edelstein refused to approve several orders, jointly proposed by the parties, to allow them to dispose of billions of pages of documents accumulated over the course of the litigation. These documents had not been introduced into evidence nor referred to during the trial. IBM averred that retention of the documents was costing it several million dollars each year, *id.* at 594, $100,000 a week, *id.* at 603.

Third, Judge Edelstein raised the possibility that the District Court might be obliged to reject the stipulation for dismissal because of the provisions of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16(b)-(h) (1988) ("the Tunney Act"), which requires public disclosure and judicial scrutiny of the terms and potential impacts of consent decrees. IBM responded to this possibility by asserting that the stipulation had terminated the District Court's jurisdiction. Judge Edelstein rejected IBM's jurisdictional challenge and, after a hearing, reserved decision as to the applicability of the Tunney Act.

Though the three developments just recounted occurred in the course of judicial rulings, Judge Edelstein's actions in the aftermath of the stipulation for dismissal extended beyond the courtroom. Notable in this regard were newspaper interviews given by the Judge concerning IBM's activities in general and Assistant Attorney General Baxter's role in particular. *See* "U.S. Aide Esti-

mates Odds Favored IBM in Antitrust Action," *The Wall Street Journal*, Jan. 26, 1982, at 22; "U.S. Backing I.B.M. in Europe," *The New York Times*, Apr. 1, 1982, at D12.

These events prompted IBM to seek a writ of mandamus from this Court in the 1969 Case. Initially, we issued a writ of mandamus directing Judge Edelstein to cease any further inquiry with respect to the appropriateness of Mr. Baxter's actions in stipulating for dismissal of the 1969 Case. *1982 Mandamus*, 687 F.2d at 596–97. Subsequently, we issued a further writ of mandamus directing Judge Edelstein "(1) to cease his consideration of whether the parties must comply with the Tunney Act before their stipulation of dismissal may become effective; and (2) to dispose promptly of any matters presented by the parties necessary to effectuate the conclusion of this litigation, especially with respect to the needless storage of documents." *Id.* at 604 (footnote omitted). In determining that mandamus was warranted, we ruled that the Tunney Act did not apply to dismissals, *id.* at 600–03, that Judge Edelstein had "abused his power by taking such a substantial amount of time to resolve … a clear-cut issue," *id.* at 603, and that, in light of the Judge's refusal to spare the parties substantial and needless expenses and his actions toward Assistant Attorney General Baxter without even " 'colorable jurisdiction,' " *id.* at 604, Judge Edelstein "has abused his power *by continuing a lawsuit which the parties have sought eagerly to dismiss*," *id.* (emphasis added).

### Discussion

■ The Government raises a threshold objection that IBM's petition is untimely. Its point is that the circumstances on which IBM relies have been known to IBM since 1982, when this Court ruled on the prior mandamus petition in the 1969 Case, yet the pending petition was not filed in the 1952 Case until August 1994. Though we have observed that recusal applications are normally to be made "at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim," *Apple v. Jewish Hospital and Medical Center*, 829 F.2d 326, 333 (2d Cir.1987), that

statement, and similar expressions, *see Polizzi v. United States*, 926 F.2d 1311, 1321 (2d Cir.1991); *In re International Business Machines Corp.*, 618 F.2d 923, 932 (2d Cir.1980) ("*1980 Mandamus*"), were made in the context of on-going litigation. In that context, it is important to present recusal applications promptly for at least two reasons. First, a prompt application affords the district judge an opportunity to assess the merits of the application before taking any further steps that may be inappropriate for the judge to take. Second, a prompt application avoids the risk that a party is holding back a recusal application as a fall-back position in the event of adverse rulings on pending matters. Such considerations have no application to the context before us. The 1952 Case is in a post-judgment phase, and, until 1994, has been dormant. No action has occurred since 1970. Had IBM filed its petition in the 1952 Case in 1982, shortly after our mandamus ruling in the 1969 Case, we can be sure the Government would have sensibly urged us to reject the petition on the ground that it was both premature and unnecessary in the absence of any matters then pending or likely to be pending before Judge Edelstein in connection with the 1952 Case.

■ On the merits of the pending petition, the applicable standards are well settled. A judge is required to recuse "in any proceeding in which his impartiality might reasonably be questioned," 28 U.S.C. § 455(a) (1988), and "the test to be applied is an objective one which assumes that a reasonable person *knows and understands all the relevant facts*," *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1313 (2d Cir. 1988) (emphasis in original), *cert. denied*, 490 U.S. 1102, 109 S.Ct. 2458, 104 L.Ed.2d 1012 (1989). The remedy of mandamus will be invoked only where the petitioner has demonstrated that its right to such relief is "clear and indisputable," *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 18, 103 S.Ct. 927, 938, 74 L.Ed.2d 765 (1983), an exacting standard that we have explicitly applied in the context of mandamus petitions to challenge a judge's denial of a recusal motion, *see Drexel*, 861 F.2d at 1312.

Somewhat less clear is the extent to which the objective view of a judge's impartiality may be predicated, at least in part, on judicial rulings. Whatever doubts on this score might have previously existed, they have been substantially dispelled by the Supreme Court's decision in *Liteky v. United States,* —— U.S. ——, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). The Court explained that the "extrajudicial source" limitation applies to section 455(a), *id.,* —— U.S. at ——, 114 S.Ct. at 1156, but cautioned that the limitation is a significant *"factor,"* rather than a significant *"doctrine," id.,* —— U.S. at ——, 114 S.Ct. at 1157 (emphasis in original), and that "there is not much doctrine to the doctrine." *Id.* Furthermore, the Court pointed out that the ultimate inquiry is whether circumstances satisfy section 455(a), *i.e.,* create an objectively reasonable basis for questioning a judge's impartiality, by showing "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* "[J]udicial rulings alone," the Court observed, "almost never constitute valid basis for a bias or partiality motion" and "can only in the rarest circumstances evidence the degree of favoritism or antagonism required." *Id.* But these very expressions of a strict standard allow for the possibility that "in the rarest circumstances" judicial rulings alone can warrant recusal, and can surely do so when accompanied by extrajudicial actions. Indeed, *Liteky* noted approvingly the Court's earlier ruling in *Berger v. United States,* 255 U.S. 22, 31, 41 S.Ct. 230, 232, 65 L.Ed. 481 (1921), requiring recusal on the basis of judicial remarks made in a prior proceeding. *Liteky,* —— U.S. at ——, 114 S.Ct. at 1152 n. 1. *See also Bell v. Chandler,* 569 F.2d 556, 559 (10th Cir.1978); *United States v. Daley,* 564 F.2d 645, 651 (2d Cir.1977), *cert. denied,* 435 U.S. 933, 98 S.Ct. 1508, 55 L.Ed.2d 530 (1978).

■ In applying both the recusal and the mandamus standards to the pending petition, we do not make any finding as to the subjec-tive disposition of Judge Edelstein toward IBM, in general, or toward the issue of whether the consent decree in the 1952 Case should be terminated, in particular. Indeed, based on our knowledge of the Judge's long and distinguished career, we are prepared to assume that the Judge's subjective disposition is one of impartiality concerning both IBM and the issue of terminating the decree. But the recusal question does not turn on his subjective state of mind. We must apply an objective standard, captured by the formulation that recusal is required if impartiality "might reasonably be questioned." In other words, the issue is whether a reasonable observer, fully informed as to the circumstances of the Judge's refusal promptly to terminate his authority over the 1969 Case, after the parties had stipulated for its dismissal, would question the Judge's ability fairly and impartially to decide whether to grant the pending motion to terminate his authority over the 1952 Case—a suit that involves the same parties and the same legal context of civil antitrust law. The fact that the Government joined IBM in seeking termination of the 1969 Case and opposes termination of the 1952 Case has no bearing on the objective reasonableness of questioning the Judge's impartiality to decide the current termination issue.

We think it manifestly clear that a reasonable observer would question the Judge's impartiality on the pending issue, and we further conclude that the matter is so clear and indisputable that mandamus is warranted. In reaching these conclusions, we need not assess all of the occurrences in the course of the 1969 Case to which IBM invites our attention. We think relief is warranted based on the judicial and extrajudicial actions we have recounted—actions we have previously determined to be so far in excess of appropriate judicial actions as to warrant a prior issuance of mandamus.[1]

---

1. Our decision not to issue a writ of mandamus in 1980, which had been sought to require Judge Edelstein's recusal from the 1969 Case based on events occurring up to that time, *see 1980 Mandamus,* 618 F.2d at 927–32, does not determine the appropriateness of mandamus with respect to the 1952 Case, based primarily on events occurring in the 1969 Case after the date of the 1980 mandamus ruling. Our 1982 decision issuing a writ of mandamus with respect to the 1969 Case had found it unnecessary to consider IBM's alternate claim requesting Judge Edelstein's recusal from the 1969 Case, since our 1982 mandamus ruling left only "housekeeping" matters to be disposed of in the 1969 Case. *See 1982 Mandamus,* 687 F.2d at 604 n. 10.

Our decision to issue mandamus in this instance is reenforced by our responsibilities in the exercise of our supervisory authority over the administration of justice in the district courts. In *Liteky,* the Supreme Court pointed out that an appellate court's authority to order reassignment of a case to a different judge does not rest on the recusal statutes alone but also on the statutory power to "require such further proceedings to be had as may be just under the circumstances." 28 U.S.C. § 2106 (1988). *Liteky,* —— U.S. at —— – ——, 114 S.Ct. at 1156–57. *See United States v. Sears, Roebuck & Co.,* 785 F.2d 777, 780 (9th Cir.1986); *United States v. Robin,* 553 F.2d 8 (2d Cir.1977) (in banc).

Whether the inherent supervisory power or the related statutory reassignment power conferred by section 2106 is available when an appellate court's original jurisdiction is invoked by a petition for a writ of mandamus is not clear. In exercising mandamus jurisdiction, the Third Circuit has explicitly relied on the supervisory power to order reassignment to another judge, *see Haines .v. Liggett Group Inc.,* 975 F.2d 81, 98 (3d Cir.1992) (mandamus proceeding to test validity of nonappealable pretrial ruling), and has more recently done so on the basis of inherent authority, *see Alexander v. Primerica Holdings, Inc.,* 10 F.3d 155, 167–68 (3d Cir.1993). *See also Reserve Mining Co. v. Lord,* 529 F.2d 181, 188 (8th Cir.1976) (in banc) (supervisory power used, in context of mandamus petition, to reassign case, although court reinvoked its appellate jurisdiction by recalling mandate in prior case).

Though the Government appears to question whether the supervisory power permits reassignment on a mandamus petition, at least where, in its view, the standards of the recusal statutes are not met, we note that on the prior mandamus petition in 1982, the Government invited us to use our supervisory power to reassign the 1969 Case:

> [T]his court properly may note that district court's long-time commitment to the IBM litigation, a difficult and protracted case, and the manner ... by which the district court has attempted to resurrect a terminated case. These factors may raise concerns as to whether there is an appearance

of loss of objectivity on the part of the presiding judge. In such circumstances this Court may find it appropriate to exercise its supervisory powers to reassign this case to another judge.

Response of the United States to Petition for Extraordinary Writ, *In re International Business Machines Corp.,* No. 82–3037, at 24. We also note that when the issue of terminating the consent decree in the 1952 Case was first presented to the District Court in June 1994, the Assistant Attorney General in charge of the Antitrust Division, in outlining the choice before Judge Edelstein to adjudicate IBM's application or to have the matter put in rotation for random reassignment to another judge, stated that the Government "would have no objection" to reassignment.

The significance of the supervisory power and of section 2106, to the extent available in the exercise of mandamus jurisdiction, arises in the pending matter because the recusal issue peculiarly concerns case administration. The 1969 Case, which occasioned the prior mandamus, was assigned to Judge Edelstein because it was a "related case" with respect to the 1952 Case. The recusal issue turns primarily on whether the circumstances giving rise to the need to issue mandamus to terminate the Judge's authority over the 1969 Case create a reasonable basis for questioning his impartiality with respect to the termination of his authority over the 1952 Case. Thus, though we recognize an obligation to make sure that the standards for recusal and for mandamus are met, we draw some measure of support for our decision to issue mandamus from the case administration aspects of the controversy. These aspects both strengthen the need for mandamus in this instance and limit the precedential force of our ruling with respect to subsequent applications.

For all of these reasons, it is hereby ORDERED that a writ of mandamus issue to the Honorable David N. Edelstein directing him to recuse himself from further consideration of *United States v. IBM,* Civil Action No. 72–344 (S.D.N.Y.) (DNE) and to have the case randomly reassigned pursuant to

the normal procedures of the Southern District of New York.