**Lewis E. McBETH, Plaintiff,**

v.

**NISSAN MOTOR CORPORATION U.S.A., Defendant.**

Civ. A. No. 6:95–2755–3.

United States District Court, D. South Carolina.

April 12, 1996.

James C. Anders, Columbia, South Carolina, Pete G. Diamaduros, Whitney, White & Diamaduros, Untion, South Carolina, for plaintiff.

Joel H. Smith, John F. Kuppens, Nelson, Mullins, Riley & Scarborough, Columbia, South Carolina, for defendant.

## ORDER

GEORGE ROSS ANDERSON, Jr., District Judge.

This matter is before the Court on Defendant's Motion to Recuse. Under the best evidence rule, Fed.R.Ev. 1002, the Court strikes Defendant's Exhibit A to Defendant's Memorandum in Support of Motion to Recuse, replaces that exhibit with an authentic audiotape of the remarks, and denies the motion.

On August 22, 1995, Plaintiff filed his complaint against defendant alleging defects in a car that defendant distributed. Defendant timely answered. All pre-trial matters, except this motion, have been referred to Magistrate Judge Catoe.

On February 16, 1996 this Court held a hearing on Defendant's motion wherein the Court enunciated preliminary facts regarding this Motion. The parties were invited to respond to the Court's comments, and supplement the record as the parties felt appropriate, by March 15, 1996.

On March 15, 1996, Defendant filed Defendant's Supplemental Memorandum in Support of Motion to Recuse. On March 21, 1996, this Court held another hearing on the matter.

Defendant Nissan USA seeks recusal based on three things: 1) an out of court speech occurring two (2) years before the instant case was filed; 2) a telephone call pertaining to a prior case, occurring two (2) years before the instant case was filed, and over which there is a clear difference in the recall of the facts [1]; and 3) prior rulings in

---

1. Because this is a Motion to Recuse under § 455(a), it must be judged in light of the reasonable person who is aware of all facts and circumstances surrounding the Motion. In an effort to give the Defendant every benefit of the doubt [a benefit the Defendant is not necessarily allowed in a § 455(a) motion], this Court will assume all

facts regarding the telephone call at issue here are true as provided by Defendant. While this Court absolutely disagrees with the factual assertions of Defendant regarding this telephone call, nevertheless, this Court will assume all factual allegations of Defendant are true. For the Court's version of the facts regarding the tele-

prior cases none of which involve Nissan USA. Since no reasonable person, knowing all of the facts and circumstances, could conclude that a fair trial of Nissan USA is impossible or even unlikely, the motion is denied.

## I. LAW PERTAINING TO DEFENDANT'S MOTION

Defendant moves for recusal based on 28 U.S.C. § 455(a). This section provides as follows:

Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.[2]

■ The standard under § 455(a) is objective reasonableness and is not to be construed to require recusal on spurious or loosely based charges of partiality. The legislative history of the section makes this clear. '

No judge, of course, has a duty to sit where his impartiality might be reasonably questioned. However, the new test should not be used by judges to avoid sitting on difficult or controversial cases.

At the same time, in assessing the reasonableness of a challenge to his impartiality, each judge must be alert to avoid the possibility that those who would question his impartiality are in fact seeking to avoid the consequences of his expected adverse decision. Disqualification for lack of impartiality must have a reasonable basis. Nothing in the proposed legislation should be read to warrant the transformation of a litigant's fear that a judge may decide a question against him into a "reasonable fear" that the judge will not be impartial. Litigants ought not to have to face a judge where there is a reasonable question of impartiality, but they are not entitled to a judge of their own choice.

House Report No. 93–1453, *adopting* Senate Report No. 93–419, 3 U.S.Code Cong. & Admin. News, 93rd Cong., 2d Sess. 1974, pp. 6351–6363 at 6355.

phone call, *see,* Transcript of Hearing held March 21, 1996.

■ Thus the test to apply in the § 455(a) context is "whether another with knowledge of all the circumstances might reasonably question the judge's impartiality." *In re Beard,* 811 F.2d 818 at 827 (4th Cir.1987); *see also, United States v. Martorano,* 866 F.2d 62 at 67 (3rd. Cir.1989).

■ It is not only the existence of bias but also the appearance of bias that is sought to be avoided. The gravamen of the test is "reasonableness".

■ "The nature of the bias must be personal rather than judicial. On review, the question is whether the judge abused his discretion in denying the motion. And it is not an abuse of discretion if the complaint is merely based upon the judge's rulings in the instant case or related cases or attitude derived from his experience on the bench." [Cites omitted]. *Shaw v. Martin,* 733 F.2d 304, 308 (4th Cir.1984).

■ In considering the facts supporting a motion to recuse under § 455(a), 1) the source and 2) the character of the basis for recusal must be considered. The disqualifying bias must stem from an extrajudicial source and result in an opinion on the merits in the instant action based on something other than what was learned during participation in the case. *United States v. Grinnell Corp.,* 384 U.S. 563, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966), *Berger v. United States,* 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1921).

■ The "extrajudicial source" doctrine specifically applies in the § 455(a) context. *Liteky v. United States,* 510 U.S. 540, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). In *Liteky,* the Supreme Court provided extensive guidance on evaluating claims of bias under § 455. The Court there stated "that the 'extrajudicial source' doctrine, as we have described it, applies to § 455(a)." *Id.* at ——, 114 S.Ct. at 1157, 127 L.Ed.2d at 490. The Supreme Court continued that given the jurisprudence of recusal, it is more proper to

**2.** It is significant that Defendant only seeks recusal based on 28 U.S.C. § 455(a) and not through the much more stringent 28 U.S.C. § 144.

speak of the "extrajudicial source" factor as opposed to doctrine. Nevertheless, the Court provided guidance on analyzing recusal motions.

First, judicial rulings alone almost never constitute valid basis for a bias or partiality motion. *See United States v. Grinnell Corp.,* 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966). In and of themselves (i.e. apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source, and can only in the rarest circumstances evidence the degree of favoritism or antagonism required (as discussed below) when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not recusal. Second, opinions formed by the judge on the basis of facts introduced in the course of current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display deep-seated favoritism or antagonism that would make fair judgement impossible. ... *Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration—even a stern and short tempered judge's ordinary efforts at courtroom administration—remain immune.

*Liteky,* 510 U.S. 540 at ———– ———, 114 S.Ct. 1147 at 1157–58, 127 L.Ed.2d 474 at 490–491.

■ Moreover, when the alleged source of bias arises in the context of judicial proceedings, recusal requires a showing that the bias arises from knowledge acquired outside such proceedings and displays deep-seated and unequivocal antagonism that would render fair judgment impossible. *Liteky,* 510 U.S. 540 at ———, 114 S.Ct. 1147 at 1158, 127 L.Ed.2d 474 at 492.

Thus, for any alleged bias arising out of this or prior proceedings, recusal is required only if a "fair trial is impossible." *Id.*

■ Defendant has alleged two (2) bases for recusal: 1) remarks at the Auto Torts Seminar; and 2) prior rulings in prior proceedings not involving Nissan USA. Defendant Nissan USA *has not* alleged specific bias against this Defendant.

Because of the basis for Defendant's Motion, it is incumbent on Defendant to show that a fair trial for *this* defendant is impossible. *Liteky, Id.*

■ This Court is mindful of the jurisprudence concerning recusal motions following adverse rulings by the trial court in prior proceedings. Generally, these "prior proceedings" involved the same party. *See, e.g., United States v. Phillips,* 664 F.2d 971 (5th Cir.1981). The focus is on any alleged bias or prejudice to the party and not counsel. *In re Beard, supra; Davis v. Board of School Commissioners of Mobile County,* 517 F.2d 1044 (5th Cir.1975).

Accordingly, as to the impact of prior rulings in prior cases that did not involve Nissan USA, that allegedly show bias against defense counsel in this case, and under the Supreme Court test, Defendant must show that a fair trial for Nissan USA is impossible in the context of this § 455(a) motion. *Liteky,* 510 U.S. 540, 114 S.Ct. 1147, 127 L.Ed.2d 474.

■ That is, to evaluate the impact of prior rulings in prior proceedings to this case, Defendant must show that "a reasonable person aware of all the circumstances would have doubts concerning the impartiality of the particular judge" so to render a fair trial to the instant defendant impossible. *Liteky v. United States,* 510 U.S. 540, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994); *United States v. Martorano,* 866 F.2d 62 at 67 (3rd. Cir. 1989).

The inquiry required of the Court then is this: Would a reasonable person with knowledge of all the facts and circumstances consider that the impartiality of this judge was so tainted as to make a fair trial for Defendant Nissan USA impossible?

## II. DEFENDANT'S ALLEGATIONS OF BIAS

Defendant asserts partiality against defendants and defense counsel in general, and against the products liability team of Nelson, Mullins, Riley, & Scarborough (hereinafter "Nelson, Mullins"). Defendant relies on: 1) comments at the 1993 South Carolina Trial Lawyer's Association Auto Torts Seminar ("Auto Torts Seminar") held in Atlanta, Georgia; 2) a telephone call pertaining to a prior case [*Cameron v. General Motors*] that occurred on December 8, 1993; and 3) prior rulings in prior cases not involving Nissan USA concerning perceived discovery abuse. Of compelling interest is the fact that no specific bias is alleged against this Defendant. Each allegation will be discussed.

### 1. Waiver

As an initial matter, in the past two years, this Court has been assigned 32 products liability cases. Thirteen of these cases were defended by Nelson, Mullins. In only one case—this one—has there ever been a motion to recuse filed.[3] Similarly, in over 16 years on the bench, this Court cannot recall a Motion to Recuse emanating from any party other than those represented by Nelson, Mullins.

Similarly, since December, 1993, Nelson, Mullins has been counsel in 26 cases before this Court. In only two cases—this one and *Cameron v. General Motors*—has a motion to recuse been filed. The gravamen of Nissan USA's instant motion is that the Court harbors bias against its attorneys. It is significant that Nelson, Mullins, has never alleged bias in any of its other 24 cases before this Court, either before or since December, 1993.

While the facts may allow an inference that Defendant has waived any claim for recusal, in the interest of fairness, this Court assumes that it has not. The Court will now turn to the specific allegations proffered by Defendant Nissan USA.

### 2. Speech Given at the 1993 Auto Torts Seminar

 Defendants begin by asserting that the speech at the Auto Torts Seminar "impugned the intelligence and integrity of defense attorneys, cheered their defeats, and applauded their dissatisfaction with recent court decisions." Defendant's Memorandum, p. 3. Defendant goes on to urge recusal based on remarks regarding the response to certain punitive damages motions, using the term "habitual defendants" and "accusing [defendants] of conspiring with defense expert witnesses to control scientific organizations." Defendant's Memorandum, p. 3.

To have the remarks be the basis for recusal, they must lead a reasonable person to question the Court's impartiality as to the party in this case, Nissan USA.

The remarks at the Auto Torts Seminar would not lead a reasonable person to question the Court's impartiality as to Defendant Nissan USA in this case because:

a) Judging from the entire audiotape of the remarks no reasonable person could possibly believe they were meant as anything other than humorous;

b) Assuming the remarks were seriously intended and assuming the telephone call was as alleged by Defendant:

1) Attitudes expressed outside of court are not enough for disqualification;

2) Sympathies for a certain side in litigation are not enough;

3) Predispositions in certain types of cases are not enough;

4) Comments against counsel are not enough; and

5) Comments against the same party in different lawsuits are not enough.

#### a) The remarks were clearly meant to be, and were taken as humorous.

As is well known, humor is an effective educational tool. By mischaracterizing state-

---

3. Defendant asserts that in *Cameron v. General Motors*, this Court recused itself based on Defendant's Motion to Recuse. This statement by Defendant is not true. Defendant filed a motion to recuse. This Court denied the Motion as legally and factually insufficient. Then, this Court *sua sponte* recused itself to avoid even the appearance of impropriety. This Court did not grant Defendant's Motion in that case.

ments patently intended to be humorous, the Defendant attempts to cast doubt upon the ability of the Court to render a fair and unbiased trial. The Defendant literally "cuts and pastes" statements from different portions of the speech, strategically placing them together in a manner designed to make the innocuous appear sinister. There is no mention of the comedic tone nor the wave of laughter that followed some of my remarks. Just the cold unexpressive transcript with vituperative self-serving interpretations by Defendant is nothing but misleading.

As an initial matter, this Court strikes Defendant's exhibit A to Defendant's motion to recuse. This exhibit is a transcript of my speech given at the Auto Torts Seminar. This Court has compared the transcript to an authentic recording of the remarks and found no significant errors or omissions. However, since the remarks were clearly intended to be, and taken as humorous, and since humor is a matter of words, timing, and audience context, the best evidence of the remarks is an authentic audio recording. Fed.R. of Ev. 1002. The Court, in its discretion, strikes Defendant's Exhibit A attached to Defendant's Motion to Recuse and substitutes in its place an authentic audio recording of the 1993 Auto Torts Seminar remarks. Defendant has had a copy of the audio since December 16, 1993. *See,* November 27, 1995 Affidavit of Angela C. Quintana, ¶ 2.

In support of Defendant's motion, Defendant attempts to fabricate "bias or prejudice" against defendants and defense attorneys by pulling sentences out of context, thus ignoring and disguising the humor that was obviously intended.

The first portion of the talk dealt with computer animation as demonstrative evidence. The second segment of the presentation dealt with the United States Supreme Court decision, *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), which is characterized as arguably the most significant scientific evidence decision in the history of the Federal Rules of Evidence. The decision holds that a party will no longer be entitled to summary judgment because the adverse party's expert opinion is not "gener-

ally accepted" by the scientific community. It is further pointed out in the seminar materials that the Supreme Court listed a number of factors to be considered by the trial judge before allowing scientific opinion to be considered by a jury.

The third segment of the seminar presentation dealt with punitive damages and the United States Supreme Court decision in *TXO Production Corporation v. Alliance Resources Corporation,* 509 U.S. 443, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993). Comment was made on the consistent practice of some defendants and defense counsel to file repeated motions challenging the constitutionality of punitive damages despite and ignoring the United States Supreme Court ruling in *Pacific Mutual Life Insurance Company v. Haslip,* 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991). This Court is besieged with "canned" motions seeking to have punitive damages declared unconstitutional and I do, in fact, use a "canned" order to deny these frivolous motions rather than expend the Court's time. There is no legal obligation to grant a hearing on such motions.

If one listens to the audiotape of the presentation, it is clear that the comments and phrases on which the Defendant relies in support of its Motion, were taken out of context, were used only in a humorous vein and were clearly not indicative of the attitude which this Defendant has attempted to impute as evidencing a general attitude on the part of this Court toward defendants and their attorneys. The true humorous intent can be gleaned from an exact quote from the remarks:

> But, you know, I just got back from the defense trial lawyers meeting in Sea Island, Georgia. *You know, most of those fellows are pretty nice.* (emphasis added). *They really are* (emphasis added), but some of them, you know, they have that puritanical attitude just that kills them. They think that somebody, sometime, somewhere, is actually enjoying themselves and it kills them. They can't stand it. And, you know, they're so pessimistic, you know they walk in a room, smell flowers and they start looking around for the casket. But, and while we were down

there, you know, we all accept the fact that fish is brain food. You know what they serve three times a day at the defense lawyers? Whale. The only exercise— some of them gets, is stretching the truth—that's about all they ever get. But while I was there they nominated Terry, where is Terry? They gave Terry—I don't know whether it is an award or not— but they nominated him as the catcher for next year's Olympic javelin team. That could or could not be an honor. I don't know.

### b) Assuming the remarks were seriously intended and assuming the telephone call was as alleged by Defendant:

Defendant attempts to use these out-of-court remarks as a basis for recusal in this matter. Assuming the remarks were meant to be serious, they, as a matter of law, do not provide a basis for recusal. Similarly, the telephone call of which Defendant makes much is no basis for recusal, even assuming all facts in a light most favorable to Defendant Nissan USA. Neither the remarks nor the telephone call warrant recusal for the following reasons:

1) Attitudes expressed outside of court are not enough for disqualification;

A judge's remarks made outside of court do not provide a basis for recusal unless the movant shows actual bias against the particular party involved. *United States v. Poludniak,* 657 F.2d 948 (8th Cir.1981) (Judge's remarks in newspapers and magazines about pending case do not warrant recusal); *In re Corrugated Container Antitrust Litigation,* 614 F.2d 958 (5th Cir.1980) (Judge's remarks to attorney's involved in pending case out of court not sufficient to warrant disqualification); *United States v. Conforte,* 624 F.2d 869 (9th Cir.1980) (Judge's remarks in social setting against a particular defendant not sufficient for disqualification); *United States v. Schreiber,* 599 F.2d 534, 537–38 (3rd Cir.) (Judge not disqualified in trial of motor carrier company president for filing false statement with the ICC, although judge believed from past experience that presidents of motor carriers routinely lie to the ICC), *cert. denied,* 444 U.S. 843, 100 S.Ct. 86, 62 L.Ed.2d 56 (1979); *Scarrella v. Midwest Federal Sav. & Loan,* 536 F.2d 1207 (8th Cir.1976) (Judge's remarks that others should prevent citizens from freely speaking do not require disqualification); *United States v. Board of School Commissioners,* 503 F.2d 68 (7th Cir.1974) (Judge's remarks in newspaper about reasoning for decision in pending matter not sufficient); *Loew's Inc. v. Cole,* 185 F.2d 641, 646 (9th Cir.1950) (Judge's statement that if one of the employees discharged for behavior before congressional committee came before him, he would have to decide in his favor, not disqualifying because expressing a view of law); *Commonwealth of Pennsylvania v. Local Union 542, Int. Union of Op. Engineers,* 388 F.Supp. 155 (E.D.Pa.1974) (Judge's remarks in public setting based on judge's background and not commenting on particular cases no grounds for recusal).

Here, Nissan USA has not shown actual bias against it in this case.

2) Sympathies for a certain side in litigation are not enough;

Defendant alleges that the remarks evince a plaintiff's sympathy as well as antagonism for defendants in general and products liability defendants in specific. This simply is not true. Assuming its truth, however, it is still not sufficient for recusal unless Defendant can show bias against the specific party at issue, here, Nissan USA. Defendant has not done so. *Idaho v. Freeman,* 478 F.Supp. 33 at 35 (D.Idaho 1979) (Judge not prevented from sitting merely because he comes into every case with a background of general personal experiences, associations, and beliefs); *Lazofsky v. Sommerset Bus Co.,* 389 F.Supp. 1041 at 1043 (E.D.N.Y.1975) (Judge's natural sympathies and feelings unless they produce actual bias against a party do not warrant recusal).

3) Predispositions in certain types of cases are not enough;

Defendant also alleges that the remarks evince bias against products liability defendants. Assuming this fact were true, it is not enough as a matter of law because bias to a particular class of litigants or a particular type of case, without showing bias to a

particular party is insufficient to warrant recusal. *Smith v. Danyo,* 585 F.2d 83 (3rd Cir.1978) (Judge's adverse comments about personal injury diversity cases did not warrant recusal); *United States v. Dodge,* 538 F.2d 770 (8th Cir.1975) (Judge's disparaging comments about Indian litigants in general did not show personal bias against Indian defendant before judge); *Chessman v. Teets,* 239 F.2d 205 (9th Cir.1956) (Judge's comments about habeas corpus proceedings propriety in federal court not sufficient); *Samuel v. University of Pittsburgh,* 395 F.Supp. 1275 (W.D.Pa.1975) (Judge's comments about litigants who sue charities and the attorneys who bring the cases do not warrant recusal); *Deal v. Warner,* 369 F.Supp. 174 (W.D.Mo. 1973) (Judge's general, unfavorable comments about cases challenging the constitutionality of hair length for the military do not warrant recusal); *United States v. 16,000 Acres of Land,* 49 F.Supp. 645 (D.Kan.1942) (Judge's comments in condemnation case that the government takes advantage of landowners does not warrant recusal).

### 4) Comments against counsel are not enough;

Defendant also asserts that the remarks evinced bias against defense counsel in general and that the telephone call alleges bias against Mr. Joel Smith in particular. Again, this simply is not true. Additionally, it is not disclosed that the result of that telephone conversation was the award of sanctions for discovery abuse of $52,000 paid by Plaintiff's attorneys to Nelson Mullins.

▆▆ Defendant further asserts bias supported by the statement in the comments that Plaintiff's attorneys "would have opportunities to call [Defense lawyers] 'the sons-of-bitches that they really are.'" Defendant's Memorandum, p. 3.

Again this is a mischaracterization of the comments. From listening to the recording of the speech it is obvious that attention was being called to the unique character of the bifurcated portion of a trial where the jury considers the imposition of punitive damages on a defendant. In the speech, it was stated (regarding the bifurcation of punitive damages) that: "I believe [that that is] the best

thing that's happened." The remarks were humorously directed to the guilty defendant whose conduct was so outrageous as to be indefensible. Under the *Mattison* bifurcation procedure, *Mattison v. Dallas Carrier Corp.,* 947 F.2d 95 (4th Cir.1995), once the jury has determined that the conduct of a defendant has subjected him to punitive damages, the defendant can do little or nothing to defend himself. Hence the remark that Plaintiffs, in that portion of the trial, are free to "call them the sons of bitches they really are." This remark was meant to highlight the defendant's helpless position before a jury that just adjudged him clearly and convincingly guilty of egregious conduct. These remarks were not directed to defense counsel. Any representation to the contrary is palpably wrong.

That being said, perhaps this statement out of context and to a different audience might appear intemperate. However, it is not a basis for recusal. In *In re Beard,* 811 F.2d 818, 823 (4th Cir.1987), the Fourth Circuit Court of Appeals held that a judge's comments *ex parte* to one side's attorney, calling opposing counsel a "son-of-a-bitch" and a "wise-ass lawyer" did not warrant recusal under § 455(a). *Id.* at 830. If the particularized *ex parte* comments in *In re Beard,* about a particular attorney, in a pending matter do not warrant recusal, the referenced comment about defense lawyers in general, made with many defense lawyers in the audience, cannot and does not warrant recusal.

▆▆ Similarly, Defendant asserts that comments made in a phone call occurring two (2) years before this case was filed, constitute indicia of bias against defense counsel sufficient to show bias against Nissan USA. Such is not the case. The only aspect of Defense counsel's recollection with which the court agrees is the portion where it is stated that in response to comments by Defense counsel, the Court stated that the case [*Cameron v. General Motors* ], would get on track "or somebody was going to pay."

In fact, someone in that case did pay—the Plaintiff's attorneys—to the tune of $52,000 in sanctions. Thus, the facts are that there

was no bias shown in that telephone call against any defendant or counsel.

Even assuming the facts are as alleged by defense counsel, those comments made, in an unrelated case two (2) years before the instant case was filed, constitute no legal basis for recusal. *See, In re Cooper*, 821 F.2d 833, 844 (1st Cir.1987) (Judge's statement that lawyer would say anything under oath did not warrant disqualification); *Davis v. Board of School Comm'rs*, 517 F.2d 1044, 1050–51 (Judge's assertion that lawyer brought baseless civil rights suits not disqualifying), *cert. denied*, 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976). *Pfizer, Inc. v. Lord*, 456 F.2d 532 (8th Cir.1972) (Judge's specific comments disparaging and threatening to pending litigants regarding counsel's trial tactics did not warrant recusal); *Plaquemines Parish School Board v. United States*, 415 F.2d 817 (5th Cir.1969) (Judge's stern remarks to counsel in pending case did not warrant recusal); *Rosen v. Sugarman*, 357 F.2d 794 (2nd Cir.1966) (Judge's threats to hold attorney in contempt do not warrant recusal); *Martelli v. City of Sonoma*, 359 F.Supp. 397 (N.D.Ca. 1973) (Allegations that Judge became irate with attorney, even if taken as true, do not warrant recusal).

■ In that prior case the comments allegedly disparaging of defense counsel involved issues in pending litigation and were not directed to "all defense counsel." Thus, it is clear from the applicable case law that even if the remarks had been directed toward defense counsel in that case they would not as a matter of law warrant recusal in this case.

5) Comments against the same party in different lawsuits is not enough.

■ Defendant asserts that the speech and telephone call show a predisposition against Nissan USA. Even if the comments were directed at the current defendant, which they were not, those comments would not provide basis for recusal. *See, Federal Procedure* § 20:120 (L.Ed.1992 Supp.1995) and cases cited therein.

Further, were Defendant's argument acceptable, this Court could never hear another case. By definition, virtually every case before this Court has a defendant. To grant recusal whenever there is a defendant involved would effectively eliminate this Court from the performance of any duties from the bench in all cases. While this may be the ultimate goal of Defendant or counsel in this case, such is not a judge's commission from the President of the United States and the United States Senate.

Next, if the speech at the Auto Torts Seminar can serve as a basis for recusal where there is a defendant, then other speeches to other groups, such as the Defense Lawyer's Association and the Solicitors conferences, where occasional humorous comments are made concerning Plaintiff's lawyers, defense lawyers, prosecutors, and criminal defense attorneys, would likewise preclude sitting on any case. Clearly, the comments at the Auto Torts Seminar were intended to be, and were taken as humorous by those attending the seminar—plaintiff's and defendant's lawyers alike.

There was no bias or prejudice evidenced against automobile tort defendants, against products liability defendants, against any particular class of defendant, nor against any particular defendant in the presentation. Again, it should be recalled that the only sanction issued in the General Motors case relied on by Defendant was a sanction for discovery abuse issued against the Plaintiff's attorneys for $52,000.00, which was paid by Plaintiff's attorneys to Nelson, Mullins and Mr. Smith. Therefore, no predisposition can be shown so as to provide a basis for recusal on this ground. The remarks are no basis for recusal here.

### III. PRIOR RULINGS IN PRIOR CASES INVOLVING DEFENSE COUNSEL

■ Defendant asserts prior rulings in prior cases show "prejudice against product liability defendants and their attorneys...." Defendant's Memorandum, p. 3. As discussed above, Defendant must show that a reasonable person would question the Court's impartiality in this case, toward this Defendant, so to render a fair trial impossible. *Liteky v. United States*, 510 U.S. ——, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994); *United*

*States v. Martorano,* 866 F.2d 62 at 67 (3rd. Cir.1989).

Defendant has not done so. Given the benefit of all doubt, Defendant may have shown disapproval of the perceived discovery tactics of its attorneys in prior cases not involving Nissan USA. Assuming this bias exists, Defendant has not shown sufficient bias against defense counsel that spills over onto the client so to render fair trial of Nissan USA impossible.

Specifically, Defendant asserts that prior rulings on motions in prior cases, involving present defense counsel *but not* involving Nissan USA preclude the Court from sitting on this case. Defendant's argument is flawed specifically looking at:

1) the allegations against defense counsel and not this specific defendant; and

2) the context of this motion based on rulings in prior cases.

Defendants allege bias against its counsel evinced through prior rulings and the telephone call. Assuming the facts as alleged by Defendant Nissan USA are true, those facts are no basis for recusal in this action.

The rule is that the Court must determine "disqualification on the basis of conduct which shows bias or prejudice or lack of impartiality by focusing on the party rather than counsel." *Davis v. Board of School of Commissioners of Mobile County,* 517 F.2d 1044 at 1052 (5th Cir.1975)

Furthermore, the Fourth Circuit Court of Appeals has adopted and enunciated this rule as follows:

Bias against an attorney is not enough to require disqualification under § 455 unless petitioners can show that such a controversy would demonstrate a bias against the party itself. For the bias against an attorney to require disqualification of the trial judge, it must be of a continuing and personal nature and not simply bias against an attorney because of his conduct. [Cites omitted].

*In re Beard,* 811 F.2d 818 at 830 (4th Cir. 1987); *accord Henderson v. Department of Public Safety and Corrections,* 901 F.2d 1288 (5th Cir.1990) ("Bias for or against an attorney, who is not a party, is not enough to require disqualification unless it can be shown that such a controversy would demonstrate a bias for or against the party itself"); *In re Cooper,* 821 F.2d 833 (1st Cir.1987) ("A Court's disagreement—even one strongly stated—with *counsel* over the propriety of trial tactics does not reflect an attitude of personal bias against the *client* ") (emphasis in original); *Gilbert v. City of Little Rock,* 722 F.2d 1390 (8th Cir.1983) ("Antipathy to an attorney is insufficient grounds for disqualification of a judge because it is not indicative of extrajudicial bias against a 'party' "), *cert. denied,* 466 U.S. 972, 104 S.Ct. 2347, 80 L.Ed.2d 820 (1984).

As will be discussed below, any disagreement that may have been shown in prior cases not involving Nissan USA was directed at particularized actions, and not actors. It is irrelevant to this Court who the actors are, for it is abuse of discovery and of the civil justice system that demand correction.

Defendant also asserts that prior rulings in prior cases not involving Nissan USA, which were ultimately reversed or vacated by the Fourth Circuit Court of Appeals, provide a basis for recusal.

However, the rule is that "It is axiomatic that a motion to recuse because of the appearance of partiality may not be based merely upon unfavorable judicial rulings regardless of the correctness of those rulings." *Spangler v. Sears, Roebuck and Co.,* 759 F.Supp. 1327 at 1332 (S.D.Ind.1991). *See also, McLaughlin v. Union Oil Co. of California,* 869 F.2d 1039 at 1047 (7th Cir.1989) ("Bias cannot be inferred from a mere pattern of rulings by a judicial officer, but requires evidence that, the officer had it 'in' for the party for reasons unrelated to the officer's view of the law, erroneous as that view might be"); *United States v. Phillips,* 664 F.2d 971 at 1003 (5th Cir.1981) ("a motion to recuse may not ordinarily be predicated upon the judge's rulings in the same or a related case").

Therefore, "[t]he correctness *vel non* of this court's rulings in [a] case is irrelevant to the proper inquiry under 28 U.S.C. § 455(a). Any legal, logical, or factual errors

this court has made may be corrected on appeal and do not create the appearance of partiality." *Spangler, Id.* at 1333, *citing Johnson v. Trueblood,* 629 F.2d 287, 291 (3rd Cir.1980) ("Judge's rulings at trial do not constitute grounds for recusal because they can be corrected by reversal on appeal").

Prior rulings in prior cases were, at the time made, based on an honest interpretation of the record. When any Court discerns what it considers to be improper activity during litigation, it is the Court's sworn duty to eliminate that conduct for the prompt and fair administration of justice for all parties. "A judge who believes misconduct has occurred has a responsibility to act. If counsel oversteps his bounds, delay in issuing warnings or taking action may lead to matters getting further out of hand and render it more difficult for the judge to maintain order during trial." *In re Cooper,* 821 F.2d 833, 843 (1st Cir.1987).

Even assuming that prior rulings could form the basis for a motion to recuse, and assuming that bias against counsel in a past case could ever form the basis for a motion to recuse, the totality of this Court's experience with the Nelson, Mullins firm shows no bias against the firm, the products liability section of the firm, or specific attorneys in the firm.

It is clear that in evaluating a motion to recuse under § 455(a), the Court must consider all of the circumstances, as viewed from the position of the reasonable person. *United States v. Martorano,* 866 F.2d 62 (3rd Cir.1989). Given the Court's personal history with members of the Nelson, Mullins firm, as well the experience with the product's liability section of the firm concerning discovery disputes, the totality of circumstances does not require recusal.

On numerous occasions I have publicly commended Nelson Mullins trial lawyers on their professionalism and competence when it was deserved.

To my recollection, the Nelson, Mullins law firm has never lost a products liability case

tried before this Court. Attorney Thornwell (Biff) Sowell[4] was lead defense counsel in a case involving a highway grinding machine and serious injuries. Mr. Biff Sowell did an excellent job trying the case and in a speech before a lawyer group I publicly commended him for the excellent job he had done.

Another case involved cancer phobia of an entire family (mother, father and three children) resulting from the inhalation of formaldehyde fumes from some type of pesticide. The plaintiffs' lawyer was one of my former law clerks. This was a case of first impression in South Carolina and was treated as a precedent setter. After several days of trial, the defendants were successful. That case was the first and only time an independent medical examination of an entire family over the opposition of the plaintiffs has been granted. Also, on defendant's motion to exclude the plaintiffs' expert witness on the basis that his opinion was not supported by sufficient evidence to render his opinion credible and thus admissible, the Court excluded the testimony. (This ruling was long before *Daubert*).

Later, at a speech before a group of attorneys, I publicly commended Mr. Bruce Shaw (a senior partner of Nelson, Mullins) and Mr. John Choate[5] for the highly professional and efficient manner in which they conducted the case. During my speech to the joint meeting of the Defense Lawyers and Claims Managers of South Carolina held in Asheville, North Carolina, on August 9, 1985, I publicly commended Bruce Shaw on his high degree of professionalism and his outstanding abilities as a trial lawyer.

In addition, I extended to Mr. Shaw a coveted invitation to the 1993 Fourth Circuit Judicial Conference. Since I have only one invitation to the conference to extend every three years, I would never extend this invitation to an attorney who is a member of a firm against which I harbor pervasive bias.

In the *Sanders v. Toyo Umpanki* case, after a five day trial the defendant won a jury verdict. Nelson, Mullins defended. A motion was made for a new trial and it was

---

4. Mr. Thornwell Sowell no longer practices with Nelson, Mullins.

5. Mr. John Choate no longer practices with Nelson, Mullins.

denied. Incidentally, a defense exhibit involving computer animation was admitted in this case, which in my opinion was a major factor in a victory for the defendant. This is the same case that defendants waited until one week before trial to produce plans from the Japanese defendant which completely changed the course and direction of the trial. Even though this Court denied the plaintiff's motion for new trial, Mr. Morrison and his associates of the products liability section of the Nelson, Mullins Law Firm were chastised for discovery abuse. The opinion was based on the facts in the record and not on any outside source.

■ As for alleged bias against defense counsel in general, I was honored by presentation of a trophy by the South Carolina Defense Lawyers Association 1993 Trial Academy for my participation and work in training young defense trial attorneys. Additionally, this Court's history with the firm is not indicative of bias or prejudice against Nelson, Mullins. Further though certain rulings were later reversed or vacated by the Fourth Circuit, as is evident from the various records, the rulings were confined to the facts of the particular cases evident at the time they were made.

### A. History with some attorneys in the products liability section of Nelson, Mullins regarding their conduct in discovery matters. This is limited to three cases filed in close proximity to each other:

#### 1. *Cameron v. General Motors*

This case began with attorneys in the Nelson, Mullins Firm taking a very hostile and adversarial attitude toward the court. Even though we were never even close to trial, there were sixty-nine (69) motions filed. The turning point occurred when it was ruled that Plaintiff could take the depositions of seven or eight attorneys (characterized by the Plaintiff as "Firebabies"). It was alleged, and there was sufficient information in the record to substantiate the claim, that seven or eight attorneys from separate Regional Counsel offices across the nation were called to General Motors Headquarters for the purpose of purging the General Motors' files of any adverse documents pertaining to defective gas tanks. There was evidence in the record and a video tape of an ex-employee of General Motors wherein he specifically stated that the lawyers came in and went through his files and removed documents from his office. This and other documentary evidence served as the basis for the ruling.

Further, in support of both the instant motion and the motion in *Cameron v. General Motors* for recusal, Defense counsel submitted an affidavit that allegedly chronicled a telephone conversation between the Court and Mr. Joel Smith. Paragraph 14 of that affidavit is patently untrue. Paragraph 12 is true to the extent that counsel was admonished that the case was going to get on the right track regarding the plethora of discovery disputes, or "someone was going to pay." Someone did pay in that case—the Plaintiff's attorneys.

The only lawyers sanctioned for violation of the discovery rules in this case were the plaintiff's lawyers, Mr. Few and Mr. Butler, who paid Nelson, Mullins' lawyers a total of $52,000.00 in sanctions. Nelson, Mullins was never sanctioned.

After this Court's *sua sponte* recusal, Judge Charles H. Haden, II of West Virginia was assigned the case. Following a thorough and independent review, Judge Haden reached substantially the same conclusions and held that the depositions of Regional Counsel who went to Detroit for the alleged purpose of removing the documents from the files pertaining to collision fires should be taken. On the morning the first deposition of one of the lawyers who participated in this event was to be taken, the case was settled.

Based on, *inter alia*, the above facts, this Court issued its rulings in the *Cameron* case. That the Fourth Circuit later struck portions of the Order is of no moment in considering Defendant's instant motion to dismiss.

#### 2. *Hathcock v. Navistar*

This case commenced on a note of stonewalling in the discovery process. Nelson, Mullins was lead counsel in this case and they brought in a lawyer from Arizona to argue spoliation of the evidence. The record reflects that there was a reasonable basis

upon which to conclude that the spoliation argument advanced by the Arizona lawyer was without foundation when it was later discovered that his law firm was aware of this case long before the vehicle was disposed of. The lawyers for the Nelson, Mullins Firm took full responsibility for the conduct of the discovery process, which the record reflects was non-responsive and dilatory. There was ample evidence in the record to justify what was thought at the time to be a proper corrective ruling—that is to strike their Answer and proceed on damages. The action of striking the Answer was reversed by the Fourth Circuit and this Court was disqualified from further participation in the case.

The Fourth Circuit Court of Appeals held that this Court should have been recused given the facts of that case. Specifically, the Fourth Circuit stated:

> On these facts, a reasonable person might justifiably doubt the district court judge's objectivity. Though probably insufficient to merit recusal in isolation, see, [Aiken County v. BSP Div. of Envirotech Corp., 866 F.2d 661 (4th Cir.1989)], the judge's ex parte contacts requesting the Hathcocks' counsel to draft at least the factual basis of a default order, and possibly its legal conclusions as well, do not foster an impression of objectivity, particularly since Navistar was never given an opportunity to respond to the proposed order. We are also troubled by the judge's willingness to involve the court as a participant in ongoing litigation by directing his law clerk to file an affidavit in response to Hathcocks' refusal motion. Even more telling, the judge's blunt remarks at the auto torts seminar—while a jury trial on the issue of damages in this case was pending—reflect a predisposition against Navistar and other product liability defendants.

*Hathcock v. Navistar International Transportation Corp.*, 53 F.3d 36 (4th Cir.1995).

*Hathcock* is different on its facts from the case at bar. There have been no allegations of *ex parte* contacts, no involvement of the Court in the litigation, and at the time of the Auto Torts Seminar Remarks in December, 1993, the instant case was not filed, and would not be filed for years.

Last, after my ruling in *Hathcock* was reversed by the Court of Appeals, the case was settled before a new trial judge could be assigned.

In any case, even though my order was reversed by the Fourth Circuit, that fact is irrelevant in evaluating Defendant's instant motion. *Liteky v. United States*, 510 U.S. 540, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994).

### 3. Sanders v. Toyo Umpanki

 Rulings in this case totally belie the defendant's allegations of bias and prejudice.

The same lawyers from the products liability section of Nelson, Mullins tried this case which involved an allegedly defective forklift. Defendant won the case on the merits before a jury. A new trial motion was denied based on conduct on which the Plaintiff alleged constituted discovery abuse.

Specifically, in *Sanders*, on February 1, 1994, this Court denied a motion for new trial by Plaintiff based on the Defendant's discovery abuse presented in that case. This refusal occurred two months after the 1993 Auto Torts Seminar Speech. Had bias against defense counsel existed, there could easily have been a new trial ordered.

In *Sanders*, a set of plans never before disclosed showed up one week before trial negating all of Plaintiff's theories. While a new trial was not granted, the record supported a forceful admonition directed to the discovery practices of the Nelson, Mullins products liability lawyers in that case. *See*, January 31, 1994 Order, *Sanders v. Toyo Umpanki Co., Ltd. et al.*, C/A No. 7:92–2402–3.

The Fourth Circuit disagreed and reversed the specific findings that Nelson, Mullins attorneys "exhibited a conscious disregard for the truth" and engaged in "reprehensible" conduct. Specifically, the Fourth Circuit stated that "Although the manner in which the defendants and their attorneys conducted discovery is not commendable, there is insufficient evidence of intentional misconduct to warrant the district court's rather severe remarks." *Sanders v. CIM Industrial Ma-*

*chinery,* No. 94–1297, 64 F.3d 659, 1995 WL 501356 (4th Cir. August 23, 1995) at 9. The Fourth Circuit cited *Wilson v. Volkswagen of Am.,* 561 F.2d 494, 510–511 (4th Cir.1977), *cert. denied,* 434 U.S. 1020, 98 S.Ct. 744, 54 L.Ed.2d 768 (1978), for the proposition that it is improper to consider other cases involving counsel's alleged misbehavior in deciding an instant case without making the other proceedings part of the record and without giving counsel a chance to respond to the accusations.

The ruling in *Sanders* was deemed erroneous because I relied on other proceedings involving Nelson, Mullins attorneys in issuing the order in *Sanders.* These proceedings were not part of the record, nor did defense counsel have a chance to respond. Under, *Wilson v. Volkswagen of Am., supra,* the ruling was improper. Moreover, in retrospect the Fourth Circuit was correct in concluding that there was insufficient evidence of intentional misconduct, looking only at the facts presented in the *Sanders* case, including Defendants' "plausible explanation" of the late produced documents.

Again, even though the order was reversed by the Fourth Circuit, that fact is irrelevant in evaluating Defendant's instant motion to recuse. *Liteky v. United States,* 510 U.S. 540, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994).

Accordingly, prior rulings in prior cases, especially when those cases do not involve Nissan USA, cannot, as a matter of law, provide a basis for recusal.

## IV. DEFENDANT'S CASE SUPPORT

The standards for evaluating a § 455(a) recusal motion are relatively clear. In addition to case citations enunciating the recusal standards, Defendant cites five cases that assertedly stand for recusal. Each case is distinguishable from the facts presented here and provide Defendant no support. Each will be discussed in turn.

Defendant cites *In re International Business Machines Corp.,* 45 F.3d 641 (2nd Cir. 1995) that " 'judicial rulings alone can warrant recusal, and can surely do so when accompanied by extrajudicial actions.' *In re International Business Machines Corp.,* 45

F.3d 641, 644 (2nd Cir.1995)." Defendant's Memorandum p. 12. In that case, the Second Circuit actually stated "[b]ut these very expressions of a strict standard allows for the possibility that 'in the rarest circumstances' judicial rulings alone can warrant recusal, and can surely do so when accompanied by extrajudicial actions." *Id.* Notwithstanding the misquoting of the Second Circuit's opinion, for the reasons previously stated in this Order, the facts of the instant case do not constitute "the rarest of circumstances." Thus, *In re International Business Machines Corp.* provides no support for the Defendant's Motion.

Defendant also cites *United States v. Ritter,* 540 F.2d 459 (10th Cir.1976), *Bell v. Chandler,* 569 F.2d 556 (10th Cir.1978), *United ed States v. Murphy,* 768 F.2d 1518 (7th Cir.1985), and *Moody v. Simmons,* 858 F.2d 137 (3rd Cir.1988). All of these cases are inapposite, and therefore are not applicable here.

*Ritter,* 540 F.2d 459, is distinguishable on its facts because there were allegations that the judge was biased against the United States Attorney and in favor of the attorney who was investigating the judge on numerous Bar complaints. The Tenth Circuit Court of Appeals specifically found no misconduct, but did find that there was an appearance of impropriety and ordered the judge recused under these facts. Thus, *Ritter* is inapplicable to the facts of this case.

Similarly, *Bell, supra,* is inapplicable to this case. In *Bell,* the Tenth Circuit Court of Appeals held that personal animosity between the judge and specific attorneys of the United States Attorney's office required the judge's recusal from a pending case. In *Bell,* the judge had previously disbarred and held in contempt these specific government lawyers. Thus, while *Bell* stands for the proposition that under some circumstances friction between specific attorneys and judge may provide a basis for recusal, those circumstances are not presented here.

In *United States v. Murphy,* 768 F.2d 1518 (7th Cir.1985), it was alleged that the social relationship between the judge and an attorney created the appearance of impropriety. The Judge and the attorney were long-time,

close personal friends who planned joint vacations, one of which was to begin immediately after a verdict was reached in one of the attorney's cases before the judge. The Seventh Circuit held that even under those facts, there was no reason to recuse the judge. In the instant case, there has been no allegation that this Court has any kind of close, personal friendship with counsel so to that extent, *Murphy* is inapplicable.

Last, Defendant cites *Moody v. Simmons*, 858 F.2d 137 (3rd Cir.1988). *Moody* stands for the proposition that regardless of the facts underlying the motion for recusal, if the trial court makes statements on the record that admit bias of the court against a specific party to the proceeding, that declaration by the Court is *ipso facto* sufficient evidence of bias to warrant recusal. There has been no such declaration here.

Accordingly, Defendant's citations to the above cases do nothing to bolster its argument that this Court is biased against Nissan USA and should recuse itself based solely on: 1) a speech given two (2) years before the instant action was filed; or 2) prior rulings in prior cases not involving Nissan USA; or 3) a telephone conversation with Nelson, Mullins Attorney Joel Smith during the pendency of *Cameron, supra,* which culminated in the payment of $52,000 by Plaintiff's attorneys to Nelson, Mullins in an automobile products liability actions for discovery abuse.

## V. DEFENDANT APPEARS TO BE JUDGE SHOPPING

Along with the appearance of impartiality that must be preserved, so too must "judge shopping" be avoided. Given that Nelson, Mullins has had 26 cases before this Court since December, 1993, and there have been only two motions to recuse by Nelson, Mullins in that time, Defendant Nissan USA appears to be judge shopping.

As stated earlier, if Defendant's argument is well taken to require disqualification, any defendant may choose to disqualify the Court based on the 1993 Auto Torts Seminar speech.

Similarly, if remarks and rulings in prior cases were enough to create an appearance of partiality, any litigant before any federal judge would be free to search out an adverse past ruling from a judge, or some remark made by that judge at sometime in their career that would allegedly show bias. That would open the doors for rampant judge shopping by litigants to find a favorable forum and would be violative of both the letter and spirit of the law.

As for alleged bias against classes of litigants, during almost sixteen (16) years as a United States District Judge, this Court has never been moved to recuse itself by any party except those represented by Nelson, Mullins and then only within the last two (2) years.

This Court attempts to absolutely enforce the rules of discovery to insure every litigant a fair resolution of their case as to all parties in all cases and as to all attorneys—both plaintiff and defense counsel.

## VI. CONCLUSION

This Court has reviewed both all facts in the record as well as over two hundred (200) years of recusal jurisprudence. The inescapable conclusion is that there is no legal basis for recusal based on incidents occurring over two (2) years before the instant case was filed, or rulings in prior cases that did not involve Nissan USA. Similarly, as a factual matter, this Court concludes that no reasonable person could reasonably question the Court's partiality based on a speech given years before the instant case was filed and prior rulings in prior cases, none of which involved this defendant, so as to render a fair trial for this defendant impossible.

Accordingly, this Court denies the Motion to Recuse. Further, Defendant's Motion for Interlocutory Appeal is Denied.

IT IS SO ORDERED.